Patricia BURTON, Appellant,

v.

Duane BURTON, Appellant,

Don and Juanita Hertzog, Respondents.

K.B., Minor Child, Appellant.

No. WD 47653.

Missouri Court of Appeals,
Western District.

March 1, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

Bruce A. Bailey, Warrensburg, for appellant Patricia Burton.

Leonard K. Breon, Warrensburg, for appellant Duane Burton.

Dane Miller, Warrensburg, guardian ad litem for appellant K.B.—Minor Child.

Michael X. Edgett, Clinton, for respondents Don and Juanita Hertzog.

Before BERREY, P.J., C.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This case arises from the modification of a child custody order where the trial court did not grant custody of a minor child to either of the parents, but instead granted custody to a couple who were not formally made parties to the action until the new custody order had been announced. The biological parents, Duane and Patricia Burton, and the minor child, K.B., through her guardian ad litem, appeal from the trial court's order placing custody of K.B. with Don and Juanita Hertzog, the present custodians of the minor child.

Judgment is reversed and remanded.

The marriage of Duane Burton and Patricia Burton was dissolved on November 1, 1988. The trial court awarded custody of the minor child, K.B., born May 26, 1988, to Patricia Burton, the natural mother. The natural father, Duane Burton, was awarded reasonable visitation rights. For approximately two years after the decree of dissolution, Duane had little or no contact with the child and consistently failed to make required child support payments. In May, 1990, Duane filed a petition seeking to modify the previous custody order to enforce his visitation rights and to be kept advised of Patricia's location and both parties filed cross petitions for contempt. The parties reached an agreement on the visitation issue and the motions for contempt were withdrawn.

On January 17, 1992, Duane filed a motion for temporary custody on grounds that the child had been removed by Patricia to the State of Nebraska. Patricia cross-petitioned seeking to remove the child to her new home in Nebraska. Duane amended his motion to modify alleging the following changed circumstances: Patricia had refused reasonable visitation by removing the child from the State of Missouri; Patricia was living with her boyfriend in the State of Nebraska; Patricia had not provided a stable and moral living environment because she moved on frequent occasions; Patricia left the child with baby sitters frequently and for extended periods of time without checking on the well-being of the child; the child was developmentally delayed and in need of specialized care which Patricia could not provide in Nebraska; the child was in need of consistency, stability and interaction with other children and would not receive such because Patricia was living and working on a ranch "in the middle of nowhere"; Duane had received no phone visits with the child after the child was taken to Nebraska; and it was in the child's best interest to award primary custody to the natural father.

On January 31, 1992, after a hearing, the trial court entered an order which granted temporary physical custody to Duane. The court noted that the child had been seeing a children's counselor for approximately one month. The court specifically provided that the order was to be for a 30-day period to allow the counselor to complete her evaluation. On March 10, 1992, in response to Patricia's request for temporary custody, the trial court ordered a home study of Patricia's residence in Nebraska. Pursuant to stipulation of the parties, the court temporarily transferred custody back to Patricia on May 28, 1992. Patricia agreed to return the child to Missouri on weekends so the counselor would have an opportunity to observe the

child while in Patricia's primary care. After the counselor expressed concerns regarding the nature of care reported by the child and the number of hours the child had to spend on the road, the temporary custody arrangement with the natural mother was discontinued by order dated June 26, 1992.

The child remained in the temporary physical custody of Duane until January 28, 1993. After a hearing on the custody issue, the court orally announced that it was granting temporary custody of the child to Don and Juanita Hertzog, a couple with whom the child had spent substantial time, and who had testified at the hearing. Neither parent registered an objection to the temporary placement of the child with the Hertzogs. In the trial court's written order dated February 9, 1993, the trial court then went beyond any of the earlier oral comments and found that both parents led "very unstable lifestyles." The court went on to grant *permanent* custody of the child to the Hertzogs, with reasonable visitation to both parents. In the order, the court added Don and Juanita Hertzog as parties to the suit and set a further conference with all attorneys for March 23, 1993, to give the *Hertzogs* an opportunity to be heard. In the meantime, on February 15, 1993, both natural parents, in an effort to void the order, filed dismissals of their motions for modification of custody.

On February 19, 1993, Don and Juanita Hertzog filed a motion for an order to show cause why Duane should not be held in contempt for violating the trial court's custody order. The motion filed by the Hertzogs alleged that Duane had picked the child up at the Hertzog residence three days earlier, purportedly to take the child to a birthday party, and had not returned the child. The trial court issued an order to Duane Burton on February 19, 1993, directing him to show cause why he should not be held in contempt for not returning the child as required by the custody order. The guardian ad litem informed the court that he had learned that the child had been turned over to Patricia and was residing in Nebraska. The Hertzogs regained custody of the child through habeas corpus proceedings in the State of Nebraska. In April, 1993, the Hertzogs dismissed their motion for a show cause order. The child has remained in the custody of the Hertzogs since shortly before April 9, 1993, having occasional weekend visits with Patricia.

The Burtons allege that the trial court erred by: (1) awarding custody of K.B. to the Hertzogs prior to making them parties to the action as expressly required by § 452.375.-4(3)(a), RSMo 1990; (2) violating their constitutional due process rights by not giving them prior notice that the Hertzogs were adversaries regarding the issue of child custody, and by not affording them an opportunity to be heard on the issue of the Hertzogs' fitness during the proceedings; and (3) removing K.B. from the custody of Patricia Burton and placing custody in third persons because there was no specific finding that the Burtons were "unfit, unsuitable or unable" to be custodial parents, nor any finding that the welfare of the child required such a custody order, and that it was in the best interests of the child for custody to be placed with the Hertzogs. The Burtons claim that the trial court erroneously applied the law set forth in § 452.375.4(3)(a).

First, we will address appellants' claim that they were denied due process of law. The Burtons urge that they were denied their constitutional rights to procedural due process by being denied notice and an opportunity to be heard in the custody modification proceeding. Patricia specifically claims that the fourteenth amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution require that she be afforded adequate notice of third persons being added as adversarial parties to the modification proceeding and an opportunity to be heard on the issue of the third persons' suitability and fitness to be granted custody of the minor child. Appellants claim that the trial court's error prevented the appropriate presentation of evidence regarding the necessity for third-party custody, the suitability of the proposed custodians, and the best interests of the child.

Under § 452.375.4(3)(a), a court may award custody, temporary custody or visitation of a minor child to third parties if the court finds that each parent is "unfit,

unsuitable, or unable to be a custodian, or the welfare of the child requires [such placement], and it is in the best interests of the child." Custody may be awarded contrary to the requests of both parents even to persons who have not formally requested such custody. *In re Marriage of Garner*, 651 S.W.2d 564, 566 (Mo.App.1983). However, it is fundamental that restrictions imposed upon parental rights must be in accordance with due process of law. *M.J.S. v. K.E.S.*, 724 S.W.2d 318, 319–20 (Mo.App.1987).

■ Due process first requires that one be given sufficient notice that his or her rights are to be challenged in the courts. *Id.* at 320. The Burtons contend they were given insufficient notice that their parental rights might by curtailed by the court's action of awarding custody of K.B. to third parties. The Burtons *were* aware that their custody rights might be changed or restricted by modification of the custody award between themselves. However, neither had notice that their parental rights would be affected by placement of K.B. with third-party custodians until the very end of the proceedings. In its order, the trial court wrote:

> The Court finds it to be in the best interests of the minor for custody to be placed with Don and Juanita Hertzog, subject to reasonable visitation of both parents. The Court finds the change of custody to be necessary because of the substantial and continuing change in circumstances and behavior of both parents since the last custody order was entered. In accordance with R.S.Mo. 452.375.4(3)(a) the Court adds Don and Juanita Hertzog as parties to this suit, orders them to obtain an attorney, and sets a conference with all attorneys for March 23, 1993 at 2:30 p.m.

The docket entry mirrors the sequence found in the written order concerning the award of custody and the addition of the Hertzogs as parties. The Hertzogs had not intervened and had not sought custody of K.B. Thus, the Burtons had no notice that the court would consider awarding custody to the Hertzogs.

■ We hold that notice of the possible transfer of custody to third parties *sua sponte* must be given *prior* to the decision to transfer custody, not *contemporaneously* with the decision to transfer permanent custody to third parties. To hold otherwise would be to completely nullify the opportunity to be heard, which is also a fundamental due process right. An opportunity to be heard necessarily includes the right to present evidence and to confront and cross-examine opposing witnesses and to rebut their testimony with controverting evidence. *In re B.R.F.*, 669 S.W.2d 240, 248 (Mo.App. 1984). The Burtons were denied an opportunity to present evidence challenging the suitability of the Hertzogs as custodians. Nothing has been shown indicating that the Hertzogs would be unsuitable as custodians. Nevertheless, the Burtons had a right to present anything relevant to the inquiry. Thus, the Burtons were denied their constitutionally protected due process rights.

The trial court's actions here seem to fit with the procedure approved in *Rogers v. Rogers*, 786 S.W.2d 176 (Mo.App.1990) where the court indicated that the *prospective third party custodian* should be given an opportunity to be heard. The court in that case mentioned nothing about the rights of the natural parents to be heard. That case, however, involved only statutory interpretation, and did not involve constitutional due process claims by the natural parents.

This case must be remanded to the trial court for further proceedings to determine the suitability of the Hertzogs as custodians or to determine any other third party custody arrangement which would be in K.B.'s best interest. *See Garner*, 651 S.W.2d at 566. The focus on remand will be primarily on the issue of third parties as suitable custodians. It is true that the trial court did not specifically articulate a finding that the Burtons were "unfit" or "unsuitable." However, all fact issues on appeal are considered as having been resolved in accordance with the result reached. *Thompson v. Columbia Mut. Ins. Co.*, 820 S.W.2d 626, 628 (Mo.App. 1991). In his order, the trial court discussed the fitness of the Burtons, stating:

> The Court finds that both the biological mother and father have very unstable lifestyles. The Petitioner is currently living

with her present boyfriend at an extremely desolate camp on a remote ranch in northwest Nebraska; the Respondent has moved six times during the past eight months because of evictions and foreclosures, is an alcoholic, and his present wife is on probation for stealing and passing bad checks. In addition, she refuses to cooperate with school officials.

The Court further finds the minor child [K.B.] has lived three out of her four years of age with Don and Juanita Hertzog, that they are a stable and reliable, loving family that is willing to have [K.B.] live with them. The Court finds that [K.B.] desires to live with Don and Juanita Hertzog, that she considers their home to be her real home, and that she does not want to live with either biological parent.

Viewing the facts as having been resolved in accordance with the judgment, and taking into account the factual recitals of the trial court, it can be inferred that the trial court made a finding that the Burtons were unsuitable or unfit as custodial parents. *Cf. Rogers v. Rogers,* 786 S.W.2d 176, 177 (Mo.App. 1990). We hold that substantial evidence supports the finding of unsuitability or unfitness as to each parent, and that the trial court did not err in determining that the best interests of the child would be served in a different custodial arrangement. The determination of the trial court in child custody cases is allowed greater deference than in other types of cases. *Johnson v. Johnson,* 839 S.W.2d 714, 717 (Mo.App.1992). On remand, the Hertzogs shall be formally joined as parties. The trial court shall promptly conduct a hearing as to the proper custodians of the child, allowing each party notice and an opportunity to be heard as to the issue.

The appellants erroneously contend that they cut off the jurisdiction of the trial court by dismissing their respective motions. The court had already entered a custody order after hearing the evidence. Section 452.375 does not contemplate that the natural parents in a child custody dispute may deprive the court of further jurisdiction by dismissing their actions without leave of court after the case has been submitted. *See S.— v. G.—,* 298 S.W.2d 67, 74 (Mo.App.

1957). This, of course, is especially true where the trial court has found the natural parents to be unsuitable as custodians. Under our statutes, when the court has acquired jurisdiction the child becomes its "ward" and the court retains jurisdiction to enter orders concerning custody. *Id.* The trial court's jurisdiction was not abrogated by the action of the natural parents in filing dismissals.

### Conclusion

The judgment is reversed to the extent that it grants permanent custody to Mr. and Mrs. Hertzog. The case is remanded to the trial court. The trial court shall cause the Hertzogs to be formally and properly joined as parties. The Hertzogs may waive service of process and consent to the jurisdiction of the court, or else they shall be formally served with process. The trial court shall promptly conduct a hearing on the issue of the proper permanent custodian, after reasonable notice to the natural parents, and to Mr. and Mrs. Hertzog. The trial court may allow the child to continue in the temporary custody of the Hertzogs until a permanent custody determination is made.

All concur.