STATE of Missouri, ex rel., Don
HERTZOG and Juanita
Hertzog, Relators,

v.

The Honorable Mary Ellen
YOUNG, Respondent.

No. WD52578.

Missouri Court of Appeals,
Western District.

Jan. 28, 1997.

See also 874 S.W.2d 461.

Michael X. Edgett, Clinton, for Relators.

Sharon M. Westhoff, Harrisonville, Leonard K. Breon, Warrensburg, for Respondent.

Before EDWIN H. SMITH, P.J.,
ULRICH, C.J., and LAURA DENVIR
STITH, J.

LAURA DENVIR STITH, Judge.

The issue in this case concerns who should be the permanent custodian of 8–year–old K.B. Intervenors Don and Juanita Hertzog ask us to issue a writ of prohibition ordering Respondent to take no further action in this case except to grant their motion to disqualify her under Rule 51.05. We decline to issue a writ on this basis. Rule 51.05 requires that a motion to disqualify (other than one for cause) be filed within 30 days of the time the trial judge is designated. We hold that Judge Young was designated as trial judge on January 1, 1995, when she took over the

Division of the Johnson County, Missouri, Circuit Court to which this case was assigned, and not over one year later, when she notified the parties that she was setting the case for a hearing on the merits of the issue of whether the parents or the Hertzogs should have custody of the child.

We grant the Hertzogs' alternative basis for requesting a writ of prohibition, however. On prior appeal of this case, we held that the parents had been found to be unsuitable custodians for their daughter K.B. We also held, however, that the prior trial judge had erred in granting permanent custody to the Hertzogs as third-party custodians without holding a hearing as to their suitability. We remanded so that a hearing on their fitness could be held with the understanding that if they were fit they would receive permanent custody and if not, another third party would receive permanent custody. On remand, the Hertzogs were stipulated to be fit, but no award of permanent custody was made. Instead, the case was referred for a home study of the parents' home. Judge Young has now scheduled the case for a hearing on the suitability of the parents, as well as the Hertzogs, as permanent custodians. To this extent, she has acted beyond our mandate and, thus, beyond her jurisdiction. We, therefore, make our provisional writ of prohibition permanent and direct Judge Young to immediately issue an order appointing the Hertzogs as permanent custodians of the child.

Because, in the time since the prior appeal of this action, a motion to modify has been filed, once the court issues the above order it may hold a hearing on, or otherwise consider, issues raised by the motion to modify.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 1993, Judge Carl Gum awarded custody of then 4–year old K.B. to third-party custodians Don and Juanita Hertzog, who had cared for K.B. most of her life. In *Burton v. Burton*, 874 S.W.2d 461 (Mo.App. 1994), we reversed the portion of that order which appointed the Hertzogs as permanent custodians of K.B. We held that, while Judge Gum had implicitly found below that the parents were unsuitable custodians, he had failed to hold a hearing as to the Hertzogs' suitability as third-party custodians. We remanded so that a hearing could be held, stating:

> This case must be remanded to the trial court for further proceedings to determine the suitability of the Hertzogs as custodians or to determine any other third party custody arrangement which would be in K.B.'s best interest. The focus on remand will be primarily on the issue of third parties as suitable custodians.

*Burton*, 874 S.W.2d at 464 (citations omitted).

We further directed that on remand, "the Hertzogs shall be formally joined as parties. The trial court shall promptly conduct a hearing as to the proper custodians of the child, allowing each party notice and an opportunity to be heard." *Id.* at 465. Our concluding paragraph reiterated:

> The trial court shall promptly conduct a hearing on the issue of the proper permanent custodian, after reasonable notice to the natural parents, and to Mr. and Mrs. Hertzog. The trial court may allow the child to continue in the temporary custody of the Hertzogs until a permanent custody determination is made.

*Id.*

On March 3, 1994, two days after our opinion was handed down, the Hertzogs filed a certificate of readiness and requested a trial setting. At the time our mandate became final at the end of May, the Hertzogs also filed a formal Motion for Trial Setting on the custody issue, which was opposed by the mother. On June 13, 1994, Judge Gum heard argument and granted intervenor's motion for trial setting. He set the trial on the custody issue for August 10, 1994.

Judge Gum was required to postpone the August 1994 hearing, however, because the mother filed a Writ of Prohibition shortly before the date on which it was scheduled. Shortly thereafter this Court denied the writ of prohibition. The Guardian ad Litem filed a motion requesting Judge Gum to transfer the matter to the Juvenile Division of the Johnson County Circuit Court for an investi-

gation and home study of the biological parents and recommendation as to permanent custody of K.B. The parties agree that Judge Gum so ordered at a hearing on October 28, 1994.

Because Judge Gum was also acting as juvenile judge for all cases, this assignment was in effect merely a formality in order to permit the noted investigation. In any event, Judge Gum's order concluded:

> The Court *specifically retains jurisdiction* over the custody issue and transfers this matter solely for the purposes of investigation and recommendation.

(emphasis added).

Judge Gum retired at the end of 1994, before the ordered investigation and recommendation were complete. Judge Mary Ellen Young was elected to the position previously held by Judge Gum and replaced Judge Gum as Judge of Division I, and as juvenile judge on this case, on January 1, 1995.

When the Petition for Writ of Prohibition was first filed in this Court, the parties indicated to this Court that because of the necessary delay resulting from referral of this matter to the Juvenile Division on October 28, 1994 for a home study of the parents, neither Judge Gum nor Judge Young had ever determined the issue of whether the Hertzogs were fit or whether they should be permanent custodians.

As discussed in Section III below, Judge Gum had in fact determined that the Hertzogs were fit custodians. For reasons not disclosed by the record, however, neither the parties nor Judge Young appear to have been aware of this determination of fitness by Judge Gum. For this reason, Judge Young believed that she was still required to make a determination of fitness. She attempted to do this by setting the case for hearing in December, 1995. For various reasons that hearing was continued to January 8, 1996. On that date Judge Young indicated she had reviewed home studies prepared by the Juvenile Office and that she would schedule a hearing at which "we will have evidence and everyone comes in equal." Counsel for the Hertzogs shortly thereafter filed a motion to disqualify Judge Young without cause

under Rule 51.05. Judge Young denied the motion on February 13, 1996.

Judge Young then indicated she would set the case for hearing on the merits. She further said that she interpreted this Court's remand order to permit her to consider all issues anew, including the suitability of the parents, and that all parties would stand on an equal footing in regard to custody.

Relators then filed their writ of prohibition asking us to prohibit Judge Young from refusing to disqualify herself, and to order her to conduct a hearing solely on their suitability and not that of the parents. We address each basis for prohibition in turn.

## II. *RELATORS' MOTION TO DISQUALIFY JUDGE YOUNG WAS UNTIMELY*

■ Judge Young properly denied the Hertzogs' motion to disqualify her. The motion was one for automatic disqualification under Rule 51.05. That rule provides in relevant part that this type of motion "must be filed no later than thirty days after the designation of the trial judge and notification to the parties or their attorneys." Rule 51.05(b).

In support of their position, the Hertzogs note that, prior to his retirement, Judge Gum had transferred this case to the Juvenile Division for investigation and recommendation, and that the case had never been transferred back to Division I for a hearing on the issue of permanent custody. They, therefore, thought that Judge Young was ordering a review of the file only in her capacity as juvenile judge, and that the trial judge on the custody issue would be designated only once the case had been retransferred to Division I.

■ We agree that some confusion resulted from the fact that Judge Young was acting both as Judge of Division I and as juvenile judge in this case, and that the record shows the case assigned to the juvenile division. We do not agree that this extended the time for filing a motion to disqualify under Rule 51.05, however.

In his order transferring the case to the juvenile judge for investigation and recom-

mendation, Judge Gum stated "[t]he Court *specifically retains jurisdiction* over the custody issue and transfers this matter solely for the purposes of investigation and recommendation" (emphasis added). Thus, the case was always assigned to Division I. Indeed, a review of the record reveals that the December 8, 1995, order setting the case for review, and the subsequent orders setting a hearing, were all issued by Division I, and that the caption of the case showed that it was pending in Division I. It thus should have been evident to all concerned that the judge of Division I would preside over the trial.

Judge Gum had originally been the judge assigned to Division I. On January 1, 1995, Judge Young replaced Judge Gum as judge of Division I. Under the authority of *State ex rel. Hagler v. Seay,* 907 S.W.2d 786 (Mo. banc 1995), on that date Judge Young became the designated trial judge in this case and in the other cases then pending in Division I (in the absence of a specific order designating some other judge as the trial judge in a particular case).

*Hagler* involved a dissolution of marriage proceeding originally assigned to Judge Steelman. Judge Steelman set the case for trial in February 1995, but Judge Steelman's term ended on December 31, 1994. In November 1994 Respondent Judge Seay was elected to fill the position formerly held by Judge Steelman and was sworn in as a judge on January 1, 1995. Relator filed a motion to disqualify 8 days later. Judge Seay denied the motion on the basis that it was untimely, ruling that he had, in effect, been designated as the trial judge when he was elected to replace Judge Steelman in November, 1994.

*Hagler* held that one can never become a designated trial judge until one is sworn into office, despite the fact one has been validly elected as a judge and will take office as the trial judge on a known date. *Hagler* thus granted the writ of prohibition and ordered Judge Steelman to disqualify himself because the motion to disqualify had been timely filed within 30 days after Judge Steelman was sworn into office, stating:

Judge Seay became the designated trial judge when he became the judge of the division to which the case had been assigned. Under the plain language of the rule, relator then had thirty days to file a request for a change of judge. The request was filed within that time.

*Hagler,* 907 S.W.2d at 787.

Unlike the relator in *Hagler,* here the Hertzogs did not file their motion for change of judge within 30 days after the time that Judge Young was sworn into office as judge of Division I. They filed it more than one year after she took over that office. Their motion was untimely and was properly denied.

## III. *OUR MANDATE LIMITED THE IS-SUES ON REMAND TO THIRD-PARTY CUSTODY ISSUES*

■ The second issue before this Court is whether Judge Young has proposed to act beyond our mandate by redetermining the issue of the suitability of both the parents and the Hertzogs as custodians. The issue arose as the parties tried to determine what issues would be resolved at the April hearing scheduled by Judge Young and as they tried to determine which party would have the burden of proof on custody. Judge Young indicated that she believed that the remand left all issues open and that she could redetermine custody as if the parents had never been found unsuitable and the Hertzogs had not yet been found suitable, stating:

THE COURT: That's what I'm going to do, the file review, and the way I read the ruling from the Appellate Court when they set aside Judge Gum's order to me, *it looks like everything is open, that we're back to square 1,* where you've got the intervenors and you've got the two natural parents, and *it looks to me like what they took back was the placement, and I don't see how I can do anything without looking at everything,* so as to who is going to have the burden of going forward, I guess I'll look at the file and give you all a ruling on that, although I don't really know that it really will have a—will really matter. I mean, everybody will still have to present their case.

It kind of makes a difference in who goes in what order.

MR. MILLER: Yeah, my only concern was, Judge, are we to pay then any attention to the findings of fitness entered by Judge Gum and then affirmed by the Court of Appeals, or you know—

THE COURT: See, I didn't read that necessarily as that. When they kicked it back, and they used quite a few times the word "may," and at some point "shall," *so at this point let's assume that it's totally open again, and the whole thing was set aside, and I will read the file and read that ruling again.*

But that's how pretty much how I saw it, that there's nothing really permanent in place anywhere.

(emphasis added).

■ As noted above, however, at the time of this hearing, and at the time we issued our preliminary writ, neither the court below nor the parties appear to have been aware that Judge Gum had already resolved the issue of the suitability of the Hertzogs as custodians. Since that time, the parties have supplemented the record in this Court with evidence of a docket entry by Judge Gum, dated October 28, 1994, which in fact did determine that the Hertzogs were fit custodians, stating in relevant part:

All parties stipulate and agree the Hertzogs are now parties to this case, and further that they are fit and proper custodians of the child at this time.

Despite finding the Hertzogs were proper custodians, Judge Gum did not enter his order awarding them permanent custody. Instead, as noted above, he granted the Guardian Ad Litem's request for a home study of the biological parents, and as noted Judge Young has now scheduled a hearing on

their suitability as permanent custodians and that of the Hertzogs.

In so ordering, Judge Gum acted beyond our mandate. Our mandate was not simply a general remand for further proceedings in accordance with our opinion. We issued a specific mandate directing a specific action to be taken.[1] Indeed, we went to considerable length to point out that the trial court had implicitly found the parents to be unsuitable custodians and that this issue would not be retried on remand. We set forth specific directions as to what would occur on remand, stating "the Hertzogs shall be formally joined as parties. The trial court shall promptly conduct a hearing as to the proper custodians of the child, allowing each party notice and an opportunity to be heard as to the issue." *Id.* We further stated:

This case must be remanded to the trial court for further proceedings to determine the suitability of the Hertzogs as custodians or to determine any other third party custody arrangement which would be in K.B.'s best interest. The focus on remand will be primarily on the issue of third parties as suitable custodians.

*Burton*, 874 S.W.2d at 464.

■ We thus limited the issue on remand to matters relevant to the suitability of the Hertzogs or others as third-party custodians. In such a case, the trial court has no discretion but to specifically comply with the terms of our mandate; the judge could not enlarge them. *Hankins v. Hankins*, 864 S.W.2d 351, 354 (Mo.App.1993).

Having found at the October 28, 1994 hearing that the Hertzogs were fit custodians, Judge Gum, and later Judge Young, had no discretion except to award permanent custody of K.B. to them in accordance with our mandate. Judge Gum erred in instead or-

---

1. If the final paragraph of *Burton* is considered in isolation, it is somewhat unclear whether the mandate is general or specific. That paragraph states in relevant part that the court:

shall promptly conduct a hearing on the issue of the proper permanent custodian, after reasonable notice to the natural parents, and to Mr. and Mrs. Hertzog. The trial court may allow the child to continue in the temporary

custody of the Hertzogs until a permanent custody determination is made.

874 S.W.2d at 465. As we recently noted in *Student Loan Marketing Ass'n v. Raja*, however, "[i]n determining whether or not the actions of the trial court were in accordance with the law of the case, this Court looks not only to the mandate, but also to the results contemplated in the opinion of the court." 914 S.W.2d 825, 829 (Mo.App.1996).

dering a home study of the parents, and Judge Young in ordering a hearing on their suitability as custodians, for their suitability was not an issue left open by our mandate. For these reasons, we order that immediately upon remand Judge Young issue her order awarding permanent custody of K.B. to the Hertzogs. At that point, having complied with our mandate, the court below will be free to consider the mother's motion to modify and any other pending issues.

For these reasons, we make our writ of prohibition permanent.

All concur.