v.

K.M., Respondent/Appellant.

In the Interest of M.M. and S.M.

Nos. 70008, 70016.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 22, 1997.

Application to Transfer Denied
Nov. 25, 1997.

David L. Campbell, James M. Martin, St. Louis, for respondent/appellant.

Rochelle Kaskowitz, St. Louis, for C.M.

Andrew T. Kotschar, St. Louis, for DJO.

KAROHL, Judge.

We consolidated the appeals of K.M. (Father), from judgments of the circuit court which decided C.M.'s (Mother) motion to modify a prior modification of an Illinois dissolution of marriage decree, Father's cross-motion to modify, and petitions filed in the juvenile court under Chapter 211.031 RSMo 1994. The subjects of this extended litigation are the sons of C.M. and K.M. M.M. was born on June 3, 1982. He is now fifteen years old. S.M. was born on September 30, 1983. He is now nearly fourteen years old. The hearing on the motions of the parties and the petitions of the deputy juvenile officer (DJO) were consolidated and held in August, 1995. The parties filed Chapter 452 motions in 1994 to modify orders entered on February 28, and May 3, 1989. The Chapter 211 petitions were filed on May 18, 1994. On November 22, 1995, the trial court denied Father's motion to modify and granted Mother's motion to modify, in part. The court modified the 1989 provisions and granted legal and physical custody of the children to Division of Family Services (DFS). It allowed both parents three hours of supervised visitation per week. On the same day it ruled on the Chapter 211 petitions, it found Chapter 211 jurisdiction on the basis that the children were in the physical custody of DFS in the City of St. Louis when the Chapter 211 petitions were filed. It granted legal and physical custody of the children to DFS indefinitely and "supervised visitation as deemed appropriate and scheduled by the Missouri Division of Family Services" for both parents. Father appeals these orders and judgments.

This is a second appeal filed by Father. On May 17, 1994, this court reversed an order of January 8, 1993, which purported to grant Mother a new trial on the modification judgments of February 28, 1989, and May 3, 1989. *C.M., f/k/a M. v. K.M.*, 878 S.W.2d 55 (Mo.App. E.D.1994). We held that the order of new trial and subsequent orders were erroneous and "of no consequence." We re-manded to the juvenile court because the order of new trial was granted in the dissolution case by a judge sitting in the juvenile court. There was no Chapter 211 juvenile court proceeding in existence at the time of the order of new trial or on the day we published our opinion. The explanation for the participation of the juvenile court lies in the 1989 orders which were the subject of both Mother and Father's motions to modify. Accordingly, all of the proceedings prior to the filing of Chapter 211 petitions, filed the day after our first opinion, were Chapter 452 proceedings.

We adopt and incorporate the facts presented in our first opinion. The original modification of the 1986 Illinois dissolution of marriage decree followed a motion for custody of his children filed by Father in 1987. The dissolution judge awarded temporary custody to a maternal aunt. Subsequently, on February 28, 1989, the court granted custody to Father, but allowed Mother scheduled and supervised visitation. After a further evidentiary hearing, the court on May 3, 1989, modified its order to prohibit visitation by Mother. This decision was based upon evidence that Mother's then husband had sexually abused and sodomized the children, in her presence and with her knowledge and consent. In connection with that finding and order, the judge transferred the Chapter 452 file to the juvenile court with a request that a decision be made whether to terminate Mother's parental rights. No Chapter 211 petition for that purpose was ever filed.

The February 28 and May 3, 1989 orders of modification granted Father care, custody and control of his sons. That award of custody in the dissolution of marriage proceeding was unchanged until the judgments now on appeal were entered on November 22, 1995, except for orders rendered ineffective by our opinion in the first appeal. Father claims trial court error in the Chapter 452 modification judgment for a number of reasons: (1) the award of lawful custody to DFS was unauthorized because the court made no finding both parents were unfit; (2) DFS was never a party to the proceedings as required

by § 452.375.5(3)(a) RSMo 1990[1]; (3) the possibility of an award of custody to DFS in the motion to modify proceeding was never pleaded or tried; and (4) there was no evidence to support a finding of a substantial change in circumstances since May 3, 1989 to justify transferring custody from Father.

## THE CHAPTER 211 PETITIONS

The decisive issue on the appeal of the judgment on the Chapter 211 petitions is the absence of jurisdiction. The court found the Chapter 211 petitions were filed at a time the boys were in physical custody of DFS in the City of St. Louis. Both findings are factually unproven and disproven. The day after this court decided the original appeal involving an order of new trial in a Chapter 452 proceeding, a DJO filed Chapter 211 petitions in the Juvenile Court of the City of St. Louis. That DJO also filed an affidavit which stated under oath, as a fact, that the boys were residents in the city or were present in the City of St. Louis. The affidavit was filed to obtain an apprehension order from the Juvenile Court of the City of St. Louis. If true, either of the allegations would have supported a finding of exclusive original jurisdiction in the Juvenile Court of the City of St. Louis. Section 211.031.1(1) RSMo 1994. However, the DJO alleged in her Chapter 211 petitions that the children resided with the Father, their legal guardian, in Imperial, Missouri. In testimony before the court the DJO acknowledged that she knew the boys were not present in the City of St. Louis and that they resided either in Jefferson or Gasconade County. Her false affidavit misled the court that issued the apprehension order. She thereby caused lengthy and expensive proceedings which were unauthorized and unlawful.

An apprehension order was issued and the boys were picked up by St. Louis County police at a residence in St. Louis County where they were visiting. Before the affidavit, the apprehension order, the pick-up and the filing of Chapter 211 petitions a judge in the juvenile court had retransferred the Chapter 452 proceeding from the juvenile court to Division 15. Accordingly, there were no proceedings pending before the Juvenile Court of the City of St. Louis at the time the affidavit was filed and the apprehension order issued.

■ In an effort to save jurisdiction for the Juvenile Court of the City of St. Louis, the DJO has argued the order of Judge Baker, granting a new trial on the 1989 modification orders, subsequently nullified by our opinion, offered the juvenile officer a "good faith" basis to require the children to be returned to the City of St. Louis. This argument is faulty for several reasons. First, the court made no such finding. Second, the Juvenile Court of the City of St. Louis never had Chapter 211 jurisdiction prior to the filing of the false affidavit. The Chapter 452 proceeding had been referred for one designated purpose, to determine whether Mother's parental rights should be terminated. Third, the two stated reasons for jurisdiction were admittedly false.

The DJO also argues "the two minor children have been continuously subject to the jurisdiction of the Twenty–Second Judicial Circuit, Domestic Relations Division or Juvenile Division." The court made no such unsupported finding. That statement may be partially true in regard to the dissolution proceeding. It is not true in regard to the juvenile division. The jurisdiction of the juvenile court under Chapter 211 was never invoked before the DJO petitions were filed in 1994.

In the alternative, the DJO argues Judge Baker, who granted the new trial, issued an order placing custody of the children with DFS, thereby previously invoking juvenile court jurisdiction. That argument ignores our holding in the first appeal and the failure of the trial court to make a finding that current jurisdiction was premised on previous proceedings. All orders entered by Judge Baker in connection with the grant of a motion for new trial were entered in a Chapter 452 proceeding and were held by this court to be "of no consequence." Thus,

---

1. The statute in effect at the time of the proceedings was § 452.375, subd. 5(3)(a) RSMo Supp. 1995.

at the time of the filing of the affidavit and at the time the DJO filed Chapter 211 petitions, the Juvenile Court of the City of St. Louis had no "historic" jurisdiction.

 Finally, the DJO contends that at all times relevant the boys' mother lived in the City of St. Louis and that conferred jurisdiction pursuant to § 211.031.1(1) RSMo 1994. The provisions of the statute do not support the argument. Subsections (a) through (e) of .1(1) do not alter the requirements of subsection .1(1) which confer jurisdiction over children who are residents or are found within a county. The residence of a parent is immaterial.

We hold the juvenile court never acquired jurisdiction over the two sons of C.M. and K.M. Accordingly, the judgments in the Chapter 211 proceedings are unenforceable and void.

## MOTHER'S MOTION TO MODIFY

In 1994 mother filed an "AMENDED MOTION TO MODIFY ORDERS REGARDING CHILD CUSTODY." The purpose of the motion was to modify the May 3, 1989 order of modification of a prior decree of dissolution. The existing order granted care and custody of the minor boys to Father and directed Mother was to have no contact with the boys until further order of court. Mother did not allege any changes affecting her present husband's sexual assault on the boys or his abuse of them or her participation in his acts. In 1989 the judge found the boys' "presence with [Mother's present husband] is a present danger; that their presence with their mother is a danger...."

Mother alleged that Father: abused and neglected the boys; drank alcoholic beverages in excess; purchased a firearm; kept the boys out of school during the school year 1988–89; failed to furnish the new school with the boys' documents and information; failed to comply with orders of the court granting supervised visitation to Mother; hid the boys from the court; alienated them from Mother; and was violent to a guardian ad litem in the boys' presence. Mother also alleges that Father's former spouse reported

Father abused the boys in September of 1989, and the evidence "as a whole" suggests Father was the perpetrator of the sexual abuse of the boys.

In findings of fact and conclusions of law, the trial court acknowledged the February 28 and May 3, 1989 findings and orders which gave Father care, custody and control and withdrew any right of visitation with Mother. It noted that the 1989 judge certified and transferred the cause to the juvenile court "for consideration of the termination of [Mother's] parental rights." The court found that a judge on January 12, 1993 returned the cause to Division 15 of the circuit court.

On substantive issues the court found:

11. On or about November 22, 1992, [Father] removed the the minor children from school and moved to Gasconade County, Missouri, living there under [an] assumed name, ...

13. [Father] brought the boys to [a local] school to discuss enrolling them.... [Father had] provided some home schooling, but did not feel that it was adequate.

14. [The local school's principal] testified that the boys told her they had never been in school before. She did some testing. The boys could not write their names. The boys did know their own birthdays, days of the week, months of the year or their current address....

15. .... The Court finds the testimony and evidence regarding home schooling to be incredible.

16. The minor children were taken into the custody of the Division of Family Services in April, 1993.[2]

17. [ ], a licensed foster parent testified that she and her husband cared for the minor children from April, 1993 through March, 1994.....

18. [the same foster parent] showed the children photographs of [prior foster parents] ... The boys became upset and when asked why, [M.M.] said that his father told him that [one of the prior foster parents] was dead.

2. We note this occurred after the DJO obtained an apprehension order with the false affidavit.

19. Both [foster parent and DJO] testified that the minor children enjoyed their supervised visitation with [Mother].

. . . .

21. While [second foster parent] cared for the boys, they attended [ ] School. At first, the children did poorly. . . . She worked with them every night. In her opinion, considering their IQ's, both of the children made excellent progress.

22. [Father] hotlined [second foster parent] for child abuse. . . .

23. [Father] made complaints to Division of Family Services against [a principal] and against two deputy juvenile officers, [ ], during the time these individuals were attempting to facilitate supervised visitation between the [boys] and their mother.

24. [Father] testified that the minor children did not want to visit with [Mother]. He stated that they should not have to visit with their mother. [Father] indicated that he would abide by a court order allowing supervised visitation if [Mother] received therapy, but added that he would not force the boys to visit with their mother.

. . . .

26. [Father] physically assaulted [ ], Guardian ad Litem, during a supervised visit and threatened to kill him, in the presence of the minor children.

27. [Father] confronted [ ], a former Guardian ad Litem, at Juvenile Court, daring [ ]to hit him so [Father] could kill him.

28. [Father] testified that his health was not real good. He is on disability . . . because of occupational illness as well as specific injuries. He is married to his fifth wife and lives with her, their baby girl and her two children from a previous marriage.

29. [Father] does not believe that it is inappropriate to discuss the abuse perpetrated by [Mother's present husband] in 1987 with the minor children. [Father] testified that his sons initiate these discussions.

30. [A DJO] testified that during [Father's] supervised visitation, [Father] brought up the subject of sexual abuse by [Mother's present husband] and was told that it is inappropriate to discuss this with the boys during the visit. [The DJO] testified that [Father] told the boys not to talk with [Mother] or to refer to her as their mother.

. . . .

34. Dr. Wells Hively testified whether or not the minor children continue supervised visitations with their mother, they will bear the emotional scars for life.

35. Linda Rogers, Ph. D., a licensed clinical psychologist was subpoenaed to testify in [Father's] case. Dr. Rogers evaluated both children. . . .

36. In Dr. Rogers' opinion, both of the children need a secure, stable environment with minimal changes or disruptions. Dr. Rogers concluded that given the history of each natural parent, neither has demonstrated an ability to provide a stable secure nurturing environment free from chaos, disruption and loss.

37. That [Father] left the St. Louis area, moved to Gasconade County where he failed to enroll the children in school from November 22, 1992 through April 7, 1993, resulting in educational neglect of the children.

38. That [Father] has discussed the sexual abuse by [Mother's present husband] which occurred in 1987 with the children outside of a therapeutic setting on several occasions in contravention to the directions of those supervising visitation.

39. That [Father's] actions, in disrupting the continuity of the minor children's education, giving them false last names, having them pretend they had never been enrolled in a school, discouraging any relationship with their natural mother and discussing the sexual abuse that occurred many years ago outside therapeutic setting, constitutes emotional abuse of the minor children.

Based on these findings the court granted legal and physical custody of the boys to the Missouri Division of Family Services for appropriate placement. The court granted Mother and Father supervised visitation one weekend day each week for three hours "as

deemed appropriate and as scheduled by the Missouri Division of Family Services."

Father argues there are a number of errors with the modification order. First, he contends DFS cannot have lawful custody in a Chapter 452 proceeding because it is not authorized by statute to accept third-party custody of a child in a dissolution action, see § 207.020(17) RSMo 1994, and was not made a party to the proceeding. Further, the court never made a finding that Father was unfit, unsuitable or unable to retain custody or it was in the best interest of the boys, that he not have custody, temporary custody or visitation. Mother's motions did not present any allegations and she offered no evidence to support a change in the previous findings and order that she was unsuitable and unfit.

*Rogers v. Rogers,* 786 S.W.2d 176, 178 (Mo.App.1990) held DFS is not authorized to accept care, custody and control of children in dissolution cases. Further, "[b]efore the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action;" Section 452.375.5(3)(a) RSMo Supp.1995. That part of the order of the motion to modify granting custody to DFS was unauthorized and a misapplication of law.

■ The remainder of Father's claims of error relate to the sufficiency of Mother's allegations of change of circumstance and her proof of the allegations to support a change in his custody. First, he argues the opinion testimony of Dr. Rogers was erroneously admitted because he was refused an opportunity to have the benefit of her report before trial. There is evidence to support that contention. More directly, however, Dr. Rogers testified that she was employed by the guardian ad litem. She was never informed of the 1989 evidence of Mother and stepfather's abuse and judgment regarding sexual abuse by them. She was not told of previous expert medical evidence that contact with Mother represented "a clear and present danger to the boy's mental and emotional health." She was not informed that the 1989 domestic relations court found Mother knew of the abuse and tried to conceal it. Dr. Rogers limited her own testimony in two

ways; (1) she acknowledged the facts which were withheld from her were relevant; and, (2) she could not speak on whether one parent or another was fit or unfit. Accordingly, her evidence: (1) offered no basis to find Father unfit; and (2) was not probative on any allegations of Mother of change of circumstance.

■ Mother filed her motions to modify in 1994. She filed her motions after the Juvenile Court of the City of St. Louis had taken the boys from Father in May of 1994. Her motion contains no allegations regarding: (1) Father's conduct with reference to foster parents; (2) hot-line calls by the Father making complaints against foster parents or officials of the juvenile court; (3) the boys' wishes regarding visitation with Mother; or, (4) events which occurred during supervised visitation of Father with his boys imposed by actions of the juvenile court. Accordingly, findings on these matters may have been appropriate in the companion proceeding involving Chapter 211 petitions but were not relevant on Mother's assertion of grounds to deprive Father of custody.

There was no evidence and no findings regarding Mother's allegations that Father drank alcoholic beverages or that purchase of a firearm had any relevance to the welfare of the boys. There was no evidence of any reports by Father's former spouse or "any signs that Father in any way ever sexually abused the boys." There were no findings on these allegations.

The court made findings regarding: (1) actions and conduct of Father with reference to his complaints about foster parents and officials of the juvenile court; and (2) Father's discussion with the boys regarding previous sexual abuse by Mother's husband and Mother. All of these matters occurred after the juvenile court, acting in excess of its jurisdiction, deprived Father of custody of the boys. None of these matters were alleged by Mother to be a ground to deprive Father of legal custody. The findings were irrelevant in the motion to modify proceeding.

Mother alleged Father tried to alienate the boys from Mother. It is difficult to conceive

that any conduct of Father could further alienate the boys from Mother, considering the factual background. The boys are now mid-teenage, old enough to remember and decide for themselves.

The court found Father moved out of St. Louis with the boys, withheld them from school in 1988–89, misled school authorities when they were registered for school and used a false last name. These findings will not support a change of custody. When Father moved to Gasconade County he had care, custody and control of the boys. Mother was not entitled to visitation and there was no matter pending before the juvenile court which constituted a restriction on his freedom of movement with his boys. Nor was the use of a fictitious name unlawful, particularly in the context of the conduct of the DJO's false affidavit. Nor was discussion of previous sexual abuse by Mother and her present husband, when raised by the boys or otherwise, evidence of abuse of the boys. They testified in the criminal trial where the state charged and convicted the step-father with the subject abuse. All of the medical authorities agreed that the boys were permanently traumatized by previous abuse.

A finding that Father, after the juvenile court took the boys from him, was "discouraging any relationship with their natural mother and discussing the sexual abuse that occurred many years ago outside a therapeutic setting, constitutes emotional abuse of the minor children" is insufficient to support a modification of Father's custody. First, discussion of sexual abuse was not alleged as a ground to modify, and Father's right, if not duty, to be available to discuss previous abuse was not limited where he had care, custody and control, and Mother, because of her misconduct, was forbidden from any contact. Because of the findings of the court in 1989 and the order prohibiting contact between Mother and sons, any discussion between Father and the boys regarding the subject of sexual abuse would be meaningless on the issue of Father's custody in the context of Mother's motion to modify.

Mother also alleged and the court found Father physically assaulted a guardian ad litem, "during a supervised visit," and threatened to kill him, while in the presence of the minor children. Father denied the allegations. He was not charged or prosecuted. Assuming, without deciding there was an unprovoked assault, there is no evidence to support a finding the children were present. The allegation of violence in the presence of the minor children was not proven.

Accordingly, we hold the trial court's findings of emotional abuse are unsupported and insufficient to support a change of custody. Allegations and evidence of a disruption of education six years before the modification will not support a finding of a change in circumstances. Father's move to Gasconade County and use of a fictitious name will not support a finding of emotional abuse of the children and there was no expert testimony that it was abusive. Considering Mother's conduct, previously found and not appealed, any discussion by Father of sexual abuse or any discussion by Father of Mother's relationship with the boys was insufficient to support a finding of emotional abuse. Except for the testimony of Dr. Rogers, there was no evidence Father's discussion would be abusive. Dr. Rogers disclaimed any opinion of fitness of Father and acknowledged that relevant previous evidence and findings of the court were withheld from her before she formed any opinions.

Mother had the burden of proving her allegation of a change of circumstance. She failed to meet that burden. In the absence of evidence of such change in circumstance a Chapter 452 modification is unauthorized. Section 452.410 RSMo 1994. There is no substantial evidence to support a modification of the custody provisions entered in February and May 1989. The modification order is unsupported and erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App. W.D.1996). This is true even after giving greater deference to the trial court's findings and order because child custody is involved. *Burton v. Burton*, 874 S.W.2d 461, 465 (Mo.App. W.D.1994).

The "best interest of child" determination regarding Mother's disqualification and Father's qualification to have care, custody and control of his sons was made in 1989. Nothing alleged or proven by Mother supports the legal conclusion that there has been a change of circumstance which requires a change of custody because of any actions or conduct of Father. The evidence offered by Mother will not support a finding that a change has occurred in the circumstances of the children or their custodian and that a modification is necessary to serve the children's best interests. The modification judgment of November 22, 1995, in cause no. 873–01192 is reversed.

We dismiss the appeal from judgments on Chapter 211 petitions because the juvenile court never acquired jurisdiction. We reverse the modification order in the dissolution case.

RHODES RUSSELL, P.J., and SIMON, J., concur.