S95A1595. WATKINS v. WATKINS.
(466 SE2d 860)

SEARS, Justice.

We granted an application for discretionary appeal in this case to consider whether, following a hearing on a parental custody dispute in the parties' divorce action, the trial court erred in awarding custody of the parties' minor children to the Department of Family and Children Services (DFCS) based upon findings that the children were deprived and the parents unfit. Because the appellant did not have notice that the trial court might award custody of her children to a third party based upon standards of deprivation, we reverse the trial court's judgment.

A final hearing in this divorce and custody action was held on April 4, 1995. In its final judgment and decree of divorce, the trial court determined that both parents were unfit, and awarded temporary custody of the children to the Stephens County DFCS, with disposition to be determined "based on the Georgia Juvenile Code." Thereafter, the superior court issued a supplemental order, without further hearing, incorporating a case plan submitted by the Stephens County DFCS. In the supplemental order, the court found that the children are deprived, and ruled that the court must find that the elements of the plan have been completed before the family can be reunited and that custody of the children would continue in Stephens County DFCS until further order of the court.[1] The children are cur-

---

[1] Although the supplemental order was entered after the appellant filed a notice of ap-

rently living with foster parents in Georgia.

1. The appellant, Rhonda Jane Watkins, contends that the trial court erred in numerous respects. In one of her contentions, she contends that the trial court's award of custody to DFCS violates due process in that she had no notice that the court might award custody to a third party based upon deprivation and parental unfitness standards. Because the trial court's ultimate disposition of the children was based upon the Juvenile Code and its standards of deprivation, we confine our analysis of the due process issue to the court's award of custody to a third party based upon its finding of deprivation. For the reasons that follow, we conclude that this issue requires that we reverse the trial court's judgment.

This Court has recognized that the " 'freedom of personal choice in matters of family life is a fundamental liberty interest,' protected by the United States Constitution,"[2] and that " '[t]he right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances.' "[3] Further, in a case in which a petition to terminate parental rights was based upon allegations under OCGA § 15-11-81 (b) (4) (A)[4] that the child was deprived, the Court of Appeals held that, to satisfy due process, the petition had to comply with OCGA § 15-11-25 by setting forth in ordinary and concise language the facts demonstrating the deprivation.[5] Without such notice, the Court of Appeals noted, the mother had insufficient information to enable her to defend against the petition.[6]

---

peal from the initial judgment, the trial court's initial decision on custody was, in effect, temporary and did not become final until the supplemental order was entered pursuant to the Juvenile Code, as directed in the initial decision. See Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction 2d, § 3914.9. As the premature notice of appeal has not misled the parties, and as the Appellate Practice Act should be liberally construed to bring about a decision on the merits of every case appealed, we conclude that both trial court orders are properly here for review. See id.; *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58 (311 SE2d 470) (1984). A contrary holding would place form over substance. See also *Stancil v. Gwinnett County*, 259 Ga. 507, 508 (384 SE2d 666) (1989); *Haggard v. Bd. of Regents*, 257 Ga. 524, 526 (360 SE2d 566) (1987) (in both cases, we held that, even though an order awarding attorney fees was made *after* an appeal was filed on the underlying judgment, the order awarding attorney fees could be reviewed as part of the direct appeal on the underlying claim).

[2] *Blackburn v. Blackburn*, 249 Ga. 689, 692 (292 SE2d 821) (1982) (quoting *Santosky v. Kramer*, 455 U. S. 745, 753 (102 SC 1388, 71 LE2d 599) (1982)).

[3] *Brooks v. Parkerson*, 265 Ga. 189 (454 SE2d 769) (1995) (quoting *In re: Suggs*, 249 Ga. 365, 367 (291 SE2d 233) (1982)).

[4] OCGA § 15-11-81 (b) (4) (A) sets forth when a court may terminate parental rights based upon a finding that a child is deprived.

[5] *In the Interest of D. R. C.*, 191 Ga. App. 278 (381 SE2d 426) (1989).

[6] Id. See also *Mathews v. Eldridge*, 424 U. S. 319, 333 (96 SC 893, 47 LE2d 18) (1976) ("[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' "); *Collins v. Morris*, 263 Ga. 734 (438 SE2d 896) (1994) (due process is a flexible concept that calls for such procedural protection as each

In this case, Ms. Watkins had no notice of the facts allegedly demonstrating deprivation against which she would have to defend. That she was entitled to such notice under § 15-11-25 is beyond dispute. It is clear that the superior court turned this parental custody dispute into a deprivation proceeding, which is within the exclusive jurisdiction of the juvenile courts, by finding that the parties' children were deprived, by awarding custody to DFCS, and by ordering that the disposition of the children proceed under the provisions of the Juvenile Code.[7] In this regard, OCGA § 15-11-5 (a) (1) (C) provides that juvenile courts "have exclusive . . . jurisdiction" over matters "concerning any child . . . [w]ho is alleged to be deprived."[8] Although the superior court judge in question also serves as a juvenile court judge in Stephens County, and thus arguably could simultaneously exercise the subject matter jurisdiction of superior and juvenile courts,[9] the judge must nevertheless when acting as a juvenile court judge follow the same procedures that bind other juvenile court judges.[10] Stated differently, the rules set forth by the General Assembly to govern juvenile court proceedings do not change merely because the judge exercising jurisdiction over juvenile matters also happens to serve as a superior court judge. Thus, here, Ms. Watkins was entitled under § 15-11-21 to pre-trial notice of the acts constituting deprivation. Further, as previously noted, the Court of Appeals in *In the Interest of D. R. C.*,[11] held that such notice was constitutionally required in a termination of parental rights action. We see no reason why that same requirement should not apply to a deprivation action, as a finding of deprivation is a significant intrusion into matters of family life and can ultimately lead to termination of parental rights.[12]

Compounding the due process problem in this case is the fact that, not only did Ms. Watkins not have notice of the facts allegedly demonstrating deprivation, she had no notice that deprivation, as defined in our Juvenile Code,[13] would even be a subject of inquiry in the

---

particular situation demands).

[7] Compare *Lewis v. Winzenreid*, 263 Ga. 459 (435 SE2d 602) (1993) (parental fight over custody of child that was brought as deprivation proceeding but did not make any valid allegations of deprivation as defined by § 15-11-2 (8) was not a valid deprivation proceeding within the jurisdiction of the juvenile court, but was a custody dispute that fell within the jurisdiction of the superior court).

[8] See also OCGA § 15-11-5 (a) (2) (C).

[9] See *In the Interest of M. M. A.*, 174 Ga. App. 898 (332 SE2d 39) (1985).

[10] See *Turnell v. Johnson*, 223 Ga. 309 (154 SE2d 591) (1967) (when a superior court judge sits as a juvenile court judge, the orders issued by him are orders of the juvenile court and not of the superior court and must conform to the legal requirements applying to juvenile courts).

[11] 191 Ga. App. 278 (381 SE2d 426) (1989).

[12] See OCGA § 15-11-41 (e).

[13] OCGA § 15-11-2 (8) provides as follows:
(8) "Deprived child" means a child who:

custody dispute with her husband at their divorce trial. As explained above, by rendering a finding of deprivation based upon the Juvenile Code, the superior court judge hearing Ms. Watkins's divorce action was exercising jurisdiction specifically reserved to juvenile courts. Yet, the judge did not notify Ms. Watkins before trial that he intended to do so and likewise did not notify her during trial that he was doing so.

Further, although we recognize that a trial court has discretion in a divorce case to award custody to a third party based upon standards of parental unfitness,[14] and that the fitness of a party seeking custody of a child is a proper subject of inquiry,[15] this authority puts a litigant on notice only of the powers that a superior court judge might exercise in her trial and does not put a litigant on notice of the possibility that a superior court judge will invoke the exclusive jurisdiction of the juvenile court during a divorce trial. We thus conclude that Ms. Watkins cannot be said to have been on notice that the superior court judge hearing her divorce trial would, at some unknown and unstated point in the trial, invoke the exclusive jurisdiction of the juvenile court; begin sitting as both a superior court and juvenile court judge; initiate deprivation proceedings; and make a finding thereon. That is to say, Ms. Watkins did not know when she went into superior court to litigate the issue of custody of her children that she would end up in juvenile court.

Because the court's award to DFCS in this case is effective for 18 months,[16] there can be no doubt that the award is a significant interference with the " 'freedom of personal choice in matters of family life,' "[17] and because the record establishes that Ms. Watkins had no notice of either the facts that might support a deprivation finding or of the possibility that the trial court might award custody of her children to a third party based upon standards of deprivation, we hold that the trial court's award of custody to DFCS violates due process and must be reversed.

2. The foregoing holding makes it unnecessary for us to decide whether due process is satisfied merely if applicable statutes and case law put a party in a divorce trial on notice of the sheer possibility that a superior court might award custody to a third party based

---

(A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health or morals;

(B) Has been placed for care or adoption in violation of law;

(C) Has been abandoned by his parents or other legal custodian; or

(D) Is without a parent, guardian, or custodian.

[14] See *Cothran v. Cothran*, 237 Ga. 487 (228 SE2d 872) (1976); *Gazaway v. Brackett*, 241 Ga. 127, 129 (244 SE2d 238) (1978).

[15] See *Adams v. Heffernan*, 217 Ga. 404 (122 SE2d 735) (1961).

[16] OCGA § 15-11-41 (d).

[17] *Blackburn*, 249 Ga. at 692.

upon standards of parental fitness and deprivation, or whether due process requires that the party actually be notified in advance that such issues will be litigated. We note, however, that the standards for deciding custody disputes between parents[18] vary significantly from the standards that apply when custody might be awarded to a third party based upon deprivation[19] or parental unfitness.[20] Moreover, if a parent knew in advance of trial of the possibility of an award to a third party, the parent's trial tactics might vary significantly from those used in a typical custody dispute between parents and could include the parents' introduction of evidence regarding whether the third party to whom the trial court was contemplating awarding the children was fit or was the best possible party to have custody. These factors raise significant concerns about the constitutionality of awarding custody of a child to a third party in a divorce case without specific notice to the parents that the trial court was considering doing so. Two courts in other states have reached this issue, and have held that due process requires that parents receive advance notice of that possibility.[21] Although we need not pass on this issue in the present case, we caution superior courts to carefully guard parents' due process rights when considering awarding their child to a third party.

3. Finally, we emphasize that the due process concerns expressed in this opinion do not diminish a trial court's power to protect children coming before it. For instance, in juvenile court, a child may be taken into custody before a hearing on a petition alleging deprivation if certain emergency circumstances are present. See OCGA §§ 15-11-17 (a) (4); 15-11-18; 15-11-20 (f); 15-11-21. If the child is detained before the hearing, the parents must be notified of the allegations of deprivations, OCGA § 15-11-25, and the hearing on the deprivation petition must occur within certain deadlines, OCGA § 15-11-26. A superior court clearly has similar emergency avenues to take care of the best interests of a child. During a divorce trial, for example, if a superior court determined that the children were in an emergency situation, it could order a third party to take temporary custody of the children, notify the parents of a final hearing as to whether custody should be permanently awarded to that third party, and could then schedule a hearing on the matter as expeditiously as possible. Alternately, after awarding temporary custody to a third party, the superior court could transfer the matter to juvenile court for it to follow

---

[18] In a custody dispute between parents, the trial court exercises its discretion to award custody based upon the "best interests of the child." *Blackburn*, 249 Ga. at 692.

[19] Deprivation, as defined by OCGA § 15-11-2 (8), must be proven by clear and convincing evidence. OCGA § 15-11-33 (b).

[20] *Blackburn*, 249 Ga. at 691-692, 694; OCGA § 19-7-1.

[21] *Anonymous v. Anonymous*, 353 S2d 515, 518-519 (Ala. 1977); *Burton v. Burton*, 874 SW2d 461, 463-464 (Mo.App. W.D. 1994).

the expedited procedures for determining deprivation in cases in which custody has been taken from the children's parents.

4. For the above reasons, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

*Judgment reversed. All the Justices concur, except Benham, C. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

In my opinion, the majority errs in focusing upon "the trial court's ultimate disposition of the children," (majority opinion, p. 270) rather than confining its analysis to the only reviewable order in this case. Moreover, even if the issue of "the trial court's ultimate disposition of the children" were reviewable in this case, I nevertheless cannot agree with the majority's resolution of that issue. Accordingly, I must respectfully dissent.

In the final judgment and decree of divorce that was entered in this case, the trial court found by clear and convincing evidence that both parents were unfit and awarded custody to DFCS. That is the only order from which Ms. Watkins ever sought permission to file a discretionary appeal and it is the only order from which this Court ever authorized the filing of a notice of appeal. As the majority recognizes, a trial court has authority in a divorce case to award custody to a third party based upon a finding of parental unfitness, and the applicable statutes and case law are sufficient to put a litigant on notice that a superior court judge might exercise that authority. (Majority opinion, p. 272.) It follows that the judgment in this case should be affirmed.

However, the majority suggests that due process may require that a trial court give specific notice to the parents that it is considering an award of custody to a third party. Yet, the only impact of requiring such notice that is even suggested by the majority is the possibility that the parent would present evidence regarding the third party's fitness to have custody. (Majority opinion, p. 273.) What the majority fails to recognize, however, is that the fitness of the third-party custodian is not even a factor in this case, since the third-party custodian is not a relative or other individual, but is DFCS. Here, it is only the fitness of the parents, not the fitness of the third-party custodian that is at issue. Furthermore, by presenting evidence that an award to him or her is in the child's best interests, a parent necessarily presents evidence that any other party would not be the best possible custodian. Thus, the majority fails to show in what material way Ms. Watkins would have presented her case differently had she known that third-party custody was a possibility. Ms. Watkins' concern was her own fitness to retain custody and, if she was shown to be unfit, she

cannot retain custody by claiming that she is less unfit than a third-party custodian.

Therefore, Ms. Watkins' due process rights were not violated when the trial court awarded custody to DFCS in the final divorce decree, which award was based upon a determination that both she and the father were unfit.

It was only *after* the notice of appeal from the final divorce decree had been filed by Ms. Watkins that the trial court entered its supplemental order addressing the issue of the children's deprivation. Ms. Watkins did not seek and this Court did not grant a discretionary appeal from that supplemental order. Furthermore, contrary to the majority's opening sentence, our grant of the application for discretionary appeal from the final divorce decree could not and did not mention the issue of deprivation, because neither the trial court nor the parties had raised the issue at the time.

In appealing from a final judgment, a complaining party may enumerate as error any other prior or contemporaneous rulings. *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980). However, a party is not entitled to enumerate as error any and all other subsequent rulings in the case. *Cates v. Cates*, 225 Ga. 612, 613 (2) (170 SE2d 416) (1969); *Hester v. Human*, 211 Ga. App. 351, 352 (1) (439 SE2d 50) (1993); *Costanzo v. Jones*, 200 Ga. App. 806, 811 (3) (409 SE2d 686) (1991). This Court does not consider judgments if rendered subsequent to the only judgment appealed from. *Lowe v. Watson*, 228 Ga. 393 (1) (185 SE2d 774) (1971); *Graham v. Haley*, 224 Ga. 498 (4) (162 SE2d 346) (1968); *Hester v. Human*, supra; *Costanzo v. Jones*, supra. Issues which are not encompassed within the final order from which an appeal has been taken, but only in a subsequent order, may not be raised on that appeal, but may be raised only pursuant to a subsequently filed notice of appeal. *Hester v. Human*, supra; *Costanzo v. Jones*, supra. The proper filing of a notice of appeal is an absolute requirement to confer jurisdiction upon an appellate court. *Rowland v. State*, 264 Ga. 872 (1) (452 SE2d 756) (1995); *McFarren v. State*, 210 Ga. App. 889, 892 (4) (437 SE2d 869) (1993). Accordingly, in my opinion, this Court is without jurisdiction to consider the trial court's supplemental order or its finding therein of deprivation.

However, even assuming that this Court did have such jurisdiction, I believe that the court should vacate the supplemental order rather than reverse it for the reason set forth in the majority opinion. Pursuant to OCGA § 5-6-46, a notice of appeal, with payment of costs, "serves as a supersedeas of the judgment (unless supersedeas bond be required), and 'while on appeal, the trial court is without authority to modify such judgment.' [Cits.]" *Cohran v. Carlin*, 249 Ga. 510, 512 (291 SE2d 538) (1982). Thus, in another case involving

the issue of child custody, we held that the trial court had no jurisdiction to supplement a previously entered final judgment after a notice of appeal had been filed. *Jackson v. Martin*, 225 Ga. 170, 172 (2) (b) (167 SE2d 135) (1969). See also *Allied Productions v. Peterson*, 233 Ga. 266, 267 (211 SE2d 123) (1974); *Deans v. Dain Mgmt.*, 201 Ga. App. 466, 468 (411 SE2d 354) (1991). These principles apply equally to this case. "The filing of an application for appeal shall act as a supersedeas to the extent that a notice of appeal acts as supersedeas." OCGA § 5-6-35 (h); *In the Interest of A. R. B.*, 209 Ga. App. 324 (1) (433 SE2d 411) (1993). Therefore, in my opinion, the trial court had no jurisdiction to issue the supplemental order and, rather than reversing on the merits, I would vacate that order for this procedural error.

In summary, it is my opinion that the final judgment and decree of divorce should be affirmed and the supplemental order and the issue of deprivation should not be addressed. Even if this Court had jurisdiction to address both the final divorce decree and the supplemental order, the former should be affirmed on the merits and the latter vacated because the trial court had no jurisdiction to issue it.

I am authorized to state that Chief Justice Benham joins in this dissent.

DECIDED FEBRUARY 19, 1996.

*Bonnie L. Loffredo, Vicky O. Kimbrell, Lisa J. Krisher, Phyllis J. Holmen, Wendy J. Glasbrenner,* for appellant.
*James T. Irvin,* for appellee.