A97A1688. PAINTER et al. v. THE STATE.
(490 SE2d 544)

POPE, Presiding Judge.

Pursuant to this Court's grant of their interlocutory application, Russell Painter and Theresa "Tracy" Pruitt appeal the superior court's denial of their motion to suppress. Concluding that Officer Ashcraft lacked a particularized and objective basis for stopping Painter's truck, we reverse.

Evidence at the suppression hearing was that on February 6, 1996, Officer Greg Ashcraft of the Douglas County Sheriff's Department was conducting an undercover surveillance in a public parking lot in front of a restaurant/bar. Ashcraft testified that he had previously witnessed drug usage and drug transactions numerous times at that parking lot. At about 8:45 p.m., he saw a Toyota Camry park in a parking space in front of him. The woman who was driving the Camry, later identified as Tracy Pruitt, sat in the car for about 15 minutes and then got out, looked in the back seat and got back into

the front seat. She then went inside the restaurant and returned to her car after about three minutes. Ashcraft surmised that she had gone inside to make a phone call. Soon after Pruitt returned to her car, a truck pulled in front of the Camry. Pruitt loaded some luggage and clothes on hangers from the Camry into the truck, got into the passenger's side of the truck and rode away with a male driver, later identified as Russell Painter. Ashcraft testified that these events were consistent with the behavior of narcotic dealers and that it appeared to him that there was going to be "some type of drug transaction."

Before the truck left the parking lot, Ashcraft ran the tag on the Camry and learned that Pruitt owned the car. Although Ashcraft did not know Pruitt, he learned from Sergeant Oliver that the police had received some information regarding Pruitt dealing in narcotics and to "keep that in mind." Sergeant Oliver testified that he did not tell Ashcraft to stop Pruitt, but said that if Ashcraft had a reason to stop Pruitt, he might want to "check them very thoroughly." Sergeant Oliver testified that he had received information from several different people that Pruitt "uses and sells narcotics." Oliver stated that he had been to Pruitt's residence three times to investigate reports of her drug activity.[1]

Based on the above facts, Ashcraft decided to follow the truck. After following the truck for a short time, and without observing any traffic violations, Ashcraft decided to have the truck stopped. Accordingly, he called Officer Loudermilk to help pull the truck over.

Officer Loudermilk pulled the truck over and Ashcraft asked Pruitt to step out. Pruitt complied and, upon request, she gave Ashcraft her identification and responded that she did not have any narcotics or weapons. Ashcraft asked for consent to search her and she refused. Ashcraft then asked Pruitt to return to the truck, and he went back to his vehicle and called a K-9 unit to the scene. Although Ashcraft did not specifically recall, he stated that an officer probably had retained Painter's license and insurance card also. The K-9 unit arrived in about 15 minutes. Ashcraft conceded that Pruitt and Painter were not free to leave and that he intended to detain them for a reasonable period until the dogs came.

The dog from the K-9 unit alerted on the truck. Painter approached the officers and asked them not to let the dog tear up his truck. At this point Ashcraft asked for consent to search the truck and Painter stated that "he didn't care." During the subsequent search of the vehicle a small quantity of marijuana, more than 70

---

[1] Sergeant Oliver testified that Pruitt's Camry was involved in another drug transaction on December 8, 1995.

grams of methamphetamine, and a stolen handgun were recovered. Painter and Pruitt were charged with violations of the Georgia Controlled Substances Act.

On appeal of a motion to suppress, "the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *State v. Williams*, 220 Ga. App. 100, 102 (2) (469 SE2d 261) (1996).

Painter and Pruitt argue that the stop, detention and search of the vehicle were conducted without any legal basis. With respect to the initial stop of the vehicle, Pruitt and Painter argue that the officers had no particularized and objective basis for suspecting them of criminal activity.

"Although an officer may conduct a brief investigative stop of a vehicle (see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979)), such a stop must be justified by 'specific and articulable facts' which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968)." *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). "The issue critical to a determination of the validity of the stop is whether the [officer] had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Citations and punctuation omitted.) *Postell v. State*, 264 Ga. 249, 250 (443 SE2d 628) (1994). "Investigative stops of vehicles are analogous to *Terry*-stops, and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." (Citations and punctuation omitted.) *State v. Fowler*, 215 Ga. App. 524, 525 (451 SE2d 124) (1994).

In the instant case, Ashcraft had no particularized and objective basis for suspecting Painter and Pruitt of criminal activity and Ashcraft observed no objectively suspicious behavior. See generally *State v. Golden*, 210 Ga. App. 800 (437 SE2d 492) (1993). Ashcraft had no information regarding Painter and no specific reason to suspect that Painter's transport of Pruitt from the restaurant was connected to the drug trade. The vague information that Ashcraft received from Sergeant Oliver that Pruitt was dealing in narcotics did not provide articulable suspicion for the investigatory stop. First, there was no evidence that the information was received from a reliable source. Moreover, the information was overly general, was completely lack-

ing in detail, and provided no basis for predicting Pruitt or Painter's future behavior. See *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990); *Moreland v. State*, 204 Ga. App. 218 (418 SE2d 788) (1992); *Swanson v. State*, 201 Ga. App. 896 (412 SE2d 630) (1991); *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826) (1990).

Accordingly, we conclude that the trial court's denial of the motion to suppress was clearly erroneous and we reverse.

*Judgment reversed. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 31, 1997.

*Winn, Price & Winn, Dan N. Winn, Barry R. Price*, for appellants.
*David McDade, District Attorney, James E. Barker, Assistant District Attorney*, for appellee.

