A97A1362. IN THE INTEREST OF C. I. W., a child.
(494 SE2d 291)

SMITH, Judge.

The mother of C. I. W. appeals from the order of the juvenile court denying her motion for new trial after her parental rights were terminated. Because we conclude that the appeal was timely and that the termination proceedings did not comply with the requirements of the applicable statutes and did not afford C. I. W.'s mother due process of law, we reverse.

The record shows that C. I. W. was born out of wedlock on February 21, 1990. With the consent of his mother, he has resided continuously with his maternal grandfather and the grandfather's wife since he was almost ten months old. In 1992, the grandparents filed a petition in the Superior Court of Putnam County, seeking to adopt C. I. W. The superior court found that although C. I. W.'s mother visited with him and maintained communication with him, she had proved to be "extremely unstable" and was unable to care adequately for or provide a proper home for C. I. W. The court found that C. I. W.'s father had maintained no contact with him and had not supported him. In an order entered February 9, 1993, in the Superior Court and bearing the adoption case number, the court denied the petition for adoption, but "sua sponte exercise[d] its jurisdiction and authority as the Juvenile Court Judge of Putnam County" and found by clear and convincing evidence that "at the time [C. I. W.] was given to petitioners by his mother, . . . this child was deprived." The court terminated the rights of C. I. W.'s father but declined to terminate the parental rights of C. I. W.'s mother, and it awarded temporary custody to the grandparents for two years, during which time the mother would have visitation and was required to pay child support.

On October 25, 1994, the grandparents filed a verified pleading in the Juvenile Court of Putnam County captioned "Motion for Extension of Juvenile Court Order." In their motion, the grandparents sought to extend their custody for an additional two-year period. C. I. W.'s mother signed an "Acknowledgement of Service," which was attached to the "Motion," acknowledging receipt of a copy of the "Complaint, Summons, and Order thereon." Some time thereafter, C. I. W.'s mother obtained legal representation.[1]

On January 25, 1996, the grandparents filed a verified pleading captioned "Amendment to Petition," in which they sought the termination of C. I. W.'s mother's parental rights. This pleading was mailed to her attorney. On January 25, 1996, C. I. W.'s mother's attorney notified her of his intent to withdraw, and he was permitted to withdraw from representation on February 16, 1996. C. I. W.'s mother did not appear at the hearing on the "Amended Petition," and her rights were terminated by order of the juvenile court signed on April 4, 1996, "nunc pro tunc as of March 26, 1996," and entered on April 10, 1996.

On April 19, 1996, present counsel filed several motions on behalf of C. I. W.'s mother, including a motion to dismiss for lack of subject matter jurisdiction and lack of jurisdiction over her person, and a motion for reconsideration of judgment and/or motion for new

---

[1] This attorney left Georgia, and another attorney was substituted on May 26, 1995.

trial in the alternative. These motions were all denied in an order entered July 23, 1996, and this appeal ensued.

1. The grandparents have filed a motion to dismiss the appeal. They contend that none of the post-judgment motions filed tolled the period during which an appeal could be filed. They argue that although the filing of a motion for new trial will generally extend the time for filing an appeal, it did not do so in this case because the issues raised on appeal show that the motion was one for reconsideration, which does not extend the time for filing an appeal. We do not agree.

The grandparents are correct, of course, that in determining the nature of the motions filed, the nomenclature applied to the motions does not control; their substance dictates how they are viewed. *Ghrist v. Fricks*, 219 Ga. App. 415, 421 (2) (465 SE2d 501) (1995). But the motion for new trial simply asserts that the judgment is "inconsistent with the evidence and unsupported thereby" and "contrary to law." A motion for new trial is a proper vehicle in which to challenge a judgment on the basis that it is inconsistent with the evidence presented and therefore contrary to law. OCGA §§ 5-5-20; 5-5-21. We certainly do not condone filing a motion for new trial based upon issues not intended to be argued on appeal, merely for the purpose of delay. But an appeal is not limited to the issues raised in the motion for new trial, OCGA § 5-5-40 (g), and we find no requirement in statute or case law that all grounds raised in a motion for new trial be enumerated as error. Since the substance of the motion indicates it may properly be construed as a motion for new trial, it extended the time for filing a notice of appeal.

We note that in appealing from the denial of the motion for new trial, the appellant was entitled to enumerate as error the denial of the other post-judgment motions as well. *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980) (when direct appeal lies on one ruling, other rulings may be appealed as well). The other motions challenged the subject matter jurisdiction of the juvenile court because no original petition was filed in the juvenile court and the matter was not transferred to the juvenile court "by such process as might satisfy the requirements of law," and challenged the juvenile court's "jurisdiction over the person of the biological mother, a necessary party." The issues raised in those motions are therefore properly before us on appeal.

2. We agree with C. I. W.'s mother that the juvenile court lacked jurisdiction over her person and the subject matter.

Where custody is in issue, the superior courts and the juvenile courts have concurrent subject matter jurisdiction when the superior court properly transfers a matter to be heard by the juvenile court. OCGA § 15-11-5 (c). But no order of transfer was entered in this case.

The juvenile court has exclusive original jurisdiction over children alleged to be deprived. OCGA § 15-11-5 (a) (1) (C). Because the trial judge issuing the February 9, 1993 order was also a juvenile court judge and apparently recognized this, the order expressly finding C. I. W. deprived and placing custody in his grandparents was issued in his capacity as juvenile court judge. The order was not entered in the juvenile court, however, but in the superior court, and it also covers issues within the exclusive jurisdiction of the superior court, such as denying the petition for adoption.

A judge of the superior court who also serves as a juvenile court judge of the same county "arguably could simultaneously exercise the subject matter jurisdiction of superior and juvenile courts." *Watkins v. Watkins*, 266 Ga. 269, 271 (466 SE2d 860) (1996). But the result of the trial court's action here was that no original petition was filed in the juvenile court to initiate either a deprivation action or an action to terminate the parental rights of C. I. W.'s mother. The first pleading filed in the juvenile court was the grandparents' motion to extend the custody placement for another two-year period. Even assuming that a motion could be filed in what was not an ongoing action, a serious problem arose when the grandparents filed in the juvenile court an amendment to their motion that encompassed subject matter — the termination of parental rights — that is required to be brought as an original petition and personally served. OCGA §§ 15-11-82; 15-11-83 (a). That was not done here.

Personal service of the *petition in the termination action* is not only required by the statute, it is constitutionally required. *Watkins*, supra. C. I. W.'s mother's acknowledgment of service accompanying the grandparents' motion to extend the previous custody order does not suffice. The mother's acquiescence in the continuing temporary placement of C. I. W. with her parents does not signify that she acquiesced in the termination of her maternal relationship with the child or even that she had notice that her parents were seeking it. When she acknowledged service, she had no notice that the termination of her parental rights would even be a subject of inquiry. See generally id. at 271-272 (1). This violated her right to due process of law.

This also deprived the juvenile court of jurisdiction over her person, because serving her attorney by mail was not equivalent to the personal service upon her required by the statute. *Gormong v. Cleveland Elec. Co.*, 180 Ga. App. 481, 482 (349 SE2d 500) (1986).

Although we have no doubt that both the trial court and the grandparents were motivated in this case by their desire to act in the best interests of the child, a superior court judge acting in his or her capacity as a juvenile court judge must follow the procedures set forth in the Juvenile Code. "[T]he rules set forth by the General Assembly to govern juvenile court proceedings do not change merely

because the judge exercising jurisdiction over juvenile matters also happens to serve as a superior court judge." *Watkins*, supra at 271. *Particularly* in such cases, because of their sensitive nature and the infringement on fundamental liberties they entail, a superior court judge serving also as a juvenile court judge must be vigilant to protect the parties' rights and interests by observing all formalities required by the law. Because such care was not taken in this case, the judgment of the juvenile court terminating the mother's parental rights must be reversed.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 19, 1997.

*Martin L. Fierman*, for appellant.
*Huskins & Huskins, Donald W. Huskins*, for appellee.