## A98A0725. WELBORN v. THE STATE.
### (503 SE2d 85)

ANDREWS, Chief Judge.

Gregory Kermit Welborn appeals from his conviction of DUI, OCGA § 40-6-391 (a) (5) (alcohol concentration of .10 grams or more), arguing that the officer lacked an articulable suspicion for their initial encounter, as well as other errors.

1. Before addressing the merits, however, it is incumbent upon us to consider our jurisdiction of the case, since timely filing of the notice of appeal is necessary to confer jurisdiction upon this Court. OCGA § 5-6-38 (a); *Simmons v. State*, 228 Ga. App. 470 (491 SE2d 908) (1997); *Brown v. Webb*, 224 Ga. App. 856, 857 (482 SE2d 382) (1997).

Here, sentence was imposed on October 9, 1997, followed by Welborn's filing of a Motion in Arrest of Judgment on October 14, 1997, which asserted that there was insufficient evidence of venue and Welborn's actual control of the vehicle. While a motion in arrest of judgment will extend the time for filing a notice of appeal, OCGA § 5-6-38 (a), as pointed out in the trial court's order of November 14, 1997, a motion in arrest of judgment is only appropriate for address-

ing any nonamendable defect appearing "on the face of the record," OCGA § 17-9-61, which, in a criminal case, consists of the indictment, plea, verdict, and judgment, *Hall v. State*, 202 Ga. 42, 46 (2) (42 SE2d 130) (1947). The matters addressed in the motion here, however, were properly the subject for a motion for new trial, which also will extend the filing time. OCGA § 5-6-38 (a).

The trial court correctly determined, and we agree, that the substance of the motion and not its nomenclature controls how the motion is to be viewed, making the appeal timely. *In the Interest of C. I. W.*, 229 Ga. App. 481, 483 (1) (494 SE2d 291) (1997). Nonetheless, we take this opportunity to impress upon counsel the need for precision in these matters so that consideration of the merits, and not jurisdiction, is paramount.

2. Welborn moved to suppress evidence of the stop and the Intoxilyzer results due to lack of articulable suspicion.[1] Because the evidence regarding the stop of Welborn was undisputed, the trial court's application of the law to these facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Officer Martin was on patrol in Dillard around midnight on February 23, 1997. As he was traveling north on Highway 441, he met a red Jeep, driven by Welborn, heading south. There was no other traffic. The Jeep was signaling a left turn, but passed several entrances without turning. Martin acknowledged that driveways in Dillard were close together and that it was reasonable to signal in advance of a turn. Nonetheless, based on this, Martin turned around and followed. Welborn was going 30 to 35 mph in a 40 to 45 mph zone, which was appropriate, and was not weaving or committing any other traffic violations.

The highway north of Dillard had no turn lane, but gradually tapered into one near the post office, in the direction Welborn was traveling. Martin testified that, where the tapering begins, hash marks appear in the turn lane which serve as a "no man's lane" until the full width of the turn lane is achieved. According to Martin, Welborn "appeared to be going straight [although still signaling a left turn] and then he just turned [left, although the turn was not unsafe]. *He never entered the turning lane* which . . . starts at the post office." (Emphasis supplied.) The post office is approximately 100 feet from Franklin Street, onto which Welborn turned left, followed by Martin. After traveling a short distance, Welborn pulled off the highway into the parking lot of a closed business, where he stopped. According to Martin, stopping in such a lot was not in viola-

---

[1] Regarding the officer's testimony concerning the stop, a motion in limine is the appropriate vehicle for seeking exclusion of the testimony for constitutional violations. *State v. Roe*, 211 Ga. App. 129 (1) (438 SE2d 186) (1993).

tion of any law. All of this occurred within one tenth of a mile of Martin's first sighting Welborn. At that point, Martin testified at trial[2] that "with a combination of all the things that had happened [he] blue lighted him and pulled in behind him." Welborn got out of the Jeep and Martin administered field sobriety tests, which Welborn did not pass.

"There are ' " 'three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief "seizures" that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. (Cits.)' " (Cit.)' *Alexander v. State*, 166 Ga. App. 233, 234 (2) (303 SE2d 773) (1983). 'In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. . . . The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.' (Citations omitted.) *State v. Banks*, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996)." *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

The encounter here is of the second type and Welborn argues that the stop was "unreasonably pretextual" because Martin lacked specific and articulable suspicion of criminal activity.

Regarding pretext, "[t]he United States Supreme Court has held, however, that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances. See *Whren v. United States*, 517 U. S. [806] (116 SC 1769, 135 LE2d 89) (1996)." *Brantley v. State*, 226 Ga. App. 872, 873 (1) (487 SE2d 412) (1997).

Under the circumstances of this case, absent an observed traffic violation, there was no particularized and objective basis for Martin's belief that Welborn was engaging in or about to engage in criminal activity or unsafe driving. *State v. Templeman*, 229 Ga. App. 6 (492 SE2d 902) (1997); *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997); *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496) (1994);

---

[2] No transcript of the motion to suppress hearing has been filed with this Court and the trial court has certified that there is none filed there. Therefore, we consider the trial evidence only. *Fritzius v. State*, 225 Ga. App. 642, 645 (484 SE2d 743) (1997).

*Streicher v. State*, 213 Ga. App. 670, 672 (445 SE2d 815) (1994); see *State v. Golden*, 210 Ga. App. 800 (437 SE2d 492) (1993).

Our consideration, therefore, focuses on Martin's contention that Welborn made an improper left turn under OCGA § 40-6-120 (a) (2) which states, in pertinent part, that "[t]he driver of a vehicle intending to turn at an intersection shall do so as follows: . . . (2) Left turn. The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle." OCGA § 40-6-123 (a) provides that "[n]o person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code Section 40-6-120 . . ." and also requires giving an appropriate and timely signal.

Martin's testimony that Welborn made an abrupt left turn from the through lane instead of the turn lane is not disputed and, therefore, this traffic violation authorized Martin's initial encounter with Welborn.[3] Although Welborn argues that the traffic violation was not the primary reason Martin approached Welborn, it was part of the reason since Martin gave him a warning for that violation, and that is sufficient. *Whren*, supra; *State v. Bowen*, 231 Ga. App. 95, 96 (498 SE2d 570) (1998); *State v. Diamond*, 223 Ga. App. 164, 165 (477 SE2d 320) (1996); *Allenbrand v. State*, 217 Ga. App. 609 (458 SE2d 382) (1995).

Therefore, the trial court's denial of Welborn's motion was not error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 10, 1998.

*Stockton & Stockton, Lawrence A. Stockton, Jr.*, for appellant.
*Michael H. Crawford, District Attorney, Robert D. Cullifer, Assistant District Attorney*, for appellee.

---

[3] Welborn's argument concerning the inapplicability of this Code section is not contained in the record and, therefore, we will not consider it here for the first time.