## A98A1439. THE STATE v. HALL.
(509 SE2d 701)

POPE, Presiding Judge.

The state appeals from the trial court's grant of appellee Clifton Walter Hall's motion to suppress marijuana and other evidence found during a vehicle search. We reverse.

In November 1997, the Gwinnett County Drug Task Force began surveillance of an individual who was believed to be a marijuana supplier. On November 7, 1997, the officers observed a black Honda at the suspected supplier's home. The officers tailed the suspect's car and the black Honda, which was following it, to several different locations until they split up and the black Honda proceeded to the interstate. The task force officers radioed for a uniformed police officer to follow the Honda and pull it over if the driver committed any traffic violations. Gwinnett County Police Officer Jim Price was in the area and responded to the radio call.

In response to the task force's request, Price followed the Honda onto I-85 and pulled the car over when he noticed it was speeding.

Shawn Weeks, the Honda's driver, consented to a search of the car, and in the course of the search a 17-pound block of marijuana was discovered.

The next day, November 8, officers from the task force were again staking out the suspect's house when they saw a blue Ford Explorer with South Carolina tags parked there. The suspect left his home and was followed by the Ford Explorer, driven by appellee Hall. Task force officers followed the cars as they drove to several different locations and until they eventually split up, with Hall heading toward I-85. Once again, the task force radioed for a uniformed police officer to follow the Ford Explorer and pull it over if the driver committed any traffic violations. Coincidentally, Price was again on duty and took the call.

Price trailed Hall's car onto the interstate and paced his car behind Hall's to clock its speed. Price determined that Hall was driving 78 mph in a 65-mph zone and that he was following the car in front of him too closely, so Price pulled him over.[1] Price requested Hall's license and proof of insurance and asked Hall where he was coming from. Hall responded with several conflicting versions of where he was staying in Atlanta and what his plans were.[2] Price then returned to the police car to run Hall's license through a computer check. He found no problems with the license and decided to write up a courtesy warning for speeding and following too closely. Officer Price returned to Hall, gave him his license and insurance, and explained that he was issuing only a courtesy warning. Price testified that the traffic stop was over at this point in time.

But as Hall turned to get back into his vehicle, Price asked him if he had a second and then mentioned the problems the police were

---

[1] Price testified at the suppression hearing that it is the normal policy of the Gwinnett police not to stop a speeder going less than 80 mph in a 65-mph zone, and that under normal circumstances, he would not have stopped Hall for speeding. But relying upon the request of the task force officers and the fact that Hall was following the car in front of him too closely, he decided to pull Hall over.

[2] Price testified: "I asked [Hall] where he was coming from. He said he was staying in the area for the weekend. I asked him who he was staying with. He said his girlfriend. And then he said, no, I'm staying with some friends of his girlfriend. I asked him where they lived. He said he didn't know. I asked him where his girlfriend was at the present time. And then he said, no, I'm waiting on her to come down from South Carolina. And then he said he was staying at the big Marriott. I asked him which Marriott. And he said, well not the one that's about five miles back. He said the other one. And I said, there's a bunch of Marriotts. I said, do you know which one? And he kept stuttering around. And he finally said, well, the Peachtree one. I said okay.

"I asked him where he was going at the present time. He said to get something to eat. I asked him where he was going to get something to eat. He had his back to the exit. When I asked him the question, he turned around. He looked up towards the exit and said, well, I guess I'm going up here (indicating). At that point, I asked him to step to the rear of his car, out of his vehicle."

having with "people running drugs and guns up and down the interstate system." Price asked Hall if he was carrying any illegal substances. He said no. Price then asked Hall if he could search his car, but Hall did not consent to a search. Price told Hall that due to his failure to give clear answers regarding his plans in Atlanta, he had decided to call in a K-9 unit to search the area around Hall's vehicle.

It took approximately 30-40 minutes for a K-9 unit to arrive on the scene after Price put in his call. In the meantime, one of the task force officers had also arrived. Both officers waited until the drug dog completed his search around the perimeter of the car and alerted on the rear of Hall's vehicle before searching the car. They discovered a large brick-type block of marijuana, scales, and ledgers reflecting various monetary transactions. It is this evidence that Hall successfully moved to suppress.

"Although an officer may conduct a brief investigative stop of a vehicle [cit.], such a stop must be justified by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968)." *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). "The issue critical to a determination of the validity of the stop is whether the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. Investigative stops of vehicles are analogous to *Terry*-stops, and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." (Citations and punctuation omitted.) *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997).

Price had specific and articulable facts to make the initial traffic stop because Hall was exceeding the posted speed limit and was following the car in front too closely. The initial stop was thus proper even if the officer would not have made the stop absent the call from the drug task force. See *State v. Kirbabas*, 232 Ga. App. 474, 477 (502 SE2d 314) (1998) (" 'In other words, if the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress under the Fourth Amendment arguing that the stop was pretextual [would] fail.' "); *Jackson v. State*, 267 Ga. 130, 131 (5) (a) (475 SE2d 637) (1996).

However, Price needed a basis other than the traffic violation to proceed with a further investigation of Hall. "An officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop

has ended and the officer has told [the] motorists they are free to go. To meet the reasonable suspicion standard, an officer's investigation during a traffic stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination." (Citations and punctuation omitted.) *Parker v. State*, 233 Ga. App. 616, 617-618 (1) (504 SE2d 774) (1998).

The trial court found that Price detained Hall because he failed to give straight answers regarding his plans and held that this was not enough to give Price a reasonable basis for further investigation. We find, however, that Hall's inconsistent responses did give rise to an articulable suspicion justifying Price's additional investigation. See *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996); *Roundtree v. State*, 213 Ga. App. 793, 794 (446 SE2d 204) (1994).

In *Pitts v. State*, this Court determined that an officer was justified in ordering a "free air" search by a drug dog during a traffic stop for failure to lower headlights in response to oncoming traffic, after the driver and his passenger gave conflicting accounts of their travel itinerary. 221 Ga. App. at 311 (2). We noted that the questions the officer asked "did not relate to a narcotics investigation. The deputy merely asked these suspects about their travel itinerary in a manner which was 'not extensive or prolonged, and (was) not unconstitutionally intrusive when balanced against the widespread clear danger of drug peddling from Florida via the roads of this state. [Cit.]' [Cit.]" Id.

In *Roundtree v. State*, this Court upheld a search by a drug dog in connection with a traffic stop for following too closely after the driver and her passenger gave conflicting information. 213 Ga. App. at 794. "Upon stopping the car, the officer's suspicions of illegal activity were aroused by the inconsistencies in the explanations given by [the driver and passenger] concerning the ownership of the car and the duration of their trip to Florida, and [the driver's] increasing nervousness. Under such circumstances, the officer's suspicions were reasonable and justified the brief investigative stop that grew out of the lawful traffic stop." Id.[3]

Price's questioning of Hall regarding his plans fell within the parameters of his investigation of the initial traffic stop and was not unconstitutionally intrusive in light of the problem of interstate drug traffic. Hall's vague and conflicting responses to these questions gave

---

[3] In both *Pitts* and *Roundtree* the air search occurred during the traffic stop. Although in this case the drug dog was called in after the traffic stop, this distinction does not alter the fact that Hall's responses during the stop provided a sufficient basis for further investigation.

Price a reasonable suspicion to conduct further investigation and to request a K-9 unit. Under these circumstances, it is clear that Price was acting on something more than a mere hunch and that the additional investigation was not arbitrary or harassing. Compare *Parker v. State*, 233 Ga. App. at 617-618 (finding search unlawful where officer testified that he asked for consent to search following a traffic stop "just for the hell of it"); *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996) (finding search unlawful where driver was merely nervous in responding to police questions, but did not give conflicting information); *Smith v. State*, 216 Ga. App. 453, 455 (2) (454 SE2d 635) (1995) (officer's hunch that driver possessed narcotics did not justify probe beyond basis for original traffic stop).

Moreover, the state produced uncontroverted evidence at the suppression hearing regarding the prior day's incident where Price had been involved with the stop and search of the black Honda driven by Weeks, resulting in the discovery of 17 pounds of marijuana. Price testified at the suppression hearing that he knew when he stopped Hall that Hall had been to the same residence where Weeks had been the day before. While the trial court made no specific findings of fact regarding this earlier incident, this background information would only have served to bolster Price's decision to order the K-9 unit. See *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997) (" '[T]he existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials'; a detaining officer is 'entitled to rely on the information given him by a fellow officer in the formation of an articulable suspicion.' [Cit.]").

*Judgment reversed. Beasley and Ruffin, JJ., concur in judgment only.*

DECIDED NOVEMBER 20, 1998

*Daniel J. Porter, District Attorney, Ben L. Leutwyler III, Assistant District Attorney*, for appellant.
*Jeffrey R. Sliz*, for appellee.