## A99A0053. HUYNH v. THE STATE.
(518 SE2d 920)

POPE, Presiding Judge.

Defendant Tri Huynh was convicted of trafficking in cocaine and possession with the intent to distribute marijuana. He appeals and we affirm.

On March 28, 1997, a Gwinnett County deputy followed Tri Huynh's car and one other car at the request of an investigator with the Gwinnett County Narcotics Task Force. The investigator indicated to the deputy that one of the cars might contain illegal drugs and he instructed the deputy to pull over either car if the driver committed a traffic offense.

The deputy testified he observed Huynh unlawfully change lanes without using a turn signal while in close proximity to other cars. See OCGA § 40-6-123. The deputy pulled Huynh over, verbally warned him and said he was free to leave. As Huynh began to walk away, the deputy asked for permission to search his vehicle. Huynh consented and signed a voluntary consent to search form. The deputy had a drug-detector dog in his patrol car and he walked the dog around the outside of Huynh's car. When the dog alerted at the driver's door, the deputy searched the car's interior and located what appeared to be contraband.

1. Huynh first argues that the initial stop was illegal because the stop was pretextual and the deputy lacked probable cause. Thus, he argues, the trial court erred in denying his motion to suppress.

The United States Supreme Court has held that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the circumstances. *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996); see *Welborn v. State*, 232 Ga. App. 837 (2) (503 SE2d 85) (1998). "In other words, if the driver of a stopped car has broken a traffic law, no matter how relatively minor, a motion to suppress evidence can no longer be based on the argument that the stop was pretextual." *Brantley v. State*, 226 Ga. App. 872, 873 (1) (487 SE2d 412) (1997). In this case the trial court found Huynh was not illegally stopped under the Fourth Amendment because the deputy testified he observed Huynh improperly change lanes.

Huynh argues this case is distinguishable from *Brantley* because the defendant in *Brantley* had not been specifically targeted when he was pulled over for speeding and the officer ultimately searched his car and discovered cocaine. Here, the deputy suspected Huynh of drug trafficking and followed him until he violated a traffic law. But even if the deputy had ulterior motives in pulling over Huynh, the

stop does not violate Huynh's Fourth Amendment rights as long as some traffic violation occurred. See *State v. Hall*, 235 Ga. App. 412 (509 SE2d 701) (1998) (physical precedent only) (finding a legal stop where the Gwinnett County Drug Task Force instructed an officer to follow a car suspected to contain drugs and to stop it when the driver committed a traffic violation).

Huynh next challenges whether any improper lane change occurred to justify the stop. In this case the deputy testified that Huynh "zigzagged" through traffic by weaving in between other cars on the road without using a signal. Huynh, however, challenges the credibility of the deputy's testimony by pointing out the deputy did not note his observations in his police report. On an appeal from the denial of a motion to suppress, however, we must defer to the trial court unless the ruling was clearly erroneous. *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990). Here, the trial court found the deputy credible and we defer to that judgment. Thus, we find the deputy had a sufficiently specific basis to justify the initial stop.

> Although an officer may conduct a brief investigative stop of a vehicle [cit.], such a stop must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).

*Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). "What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." (Citations and punctuation omitted.) *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997).

The deputy had specific and articulable facts to make the initial stop. OCGA § 40-6-123 provides, in relevant part, that

> (a) No person shall . . . change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. . . . (b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

The statute's language indicates that a turn signal is not required if changing lanes without a signal is reasonably safe. The deputy's testimony indicated that Huynh's driving was not "reasonably safe" within the meaning of the statute. Cf. *Bowers v. State*, 221 Ga. App.

886 (473 SE2d 201) (1996); see also *State v. Reddy*, 236 Ga. App. 106 (1) (511 SE2d 530) (1999).

2. Huynh next argues that his consent to search was not voluntary because he did not understand English. The State rebutted this contention by offering the deputy's testimony, which indicates that Huynh properly responded to the deputy's questions during the traffic stop. Thus, though Huynh offered

> some [contradicting] evidence that [he] did not understand English well, there was also evidence that he did. The question of whether consent was given is a fact question, and because there was competent evidence to support the trial court's ruling on this question, we will not disturb it. [Cit.]

*Martinez-Rodriguez v. State*, 195 Ga. App. 491, 492 (3) (393 SE2d 748) (1990).

3. Huynh additionally asserts that the evidence was insufficient to support the verdict. Reviewing the evidence in the light most favorable to the verdict, we find the record reflects ample evidence to support the jury's findings under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The fact that officers saw Huynh place the bag containing the drugs in his car and then later found the drugs during the traffic stop is sufficient to prove possession. Further, the jury could imply Huynh's intent to distribute based on the amount of drugs discovered. See, e.g., *Palmer v. State*, 210 Ga. App. 717, 718 (437 SE2d 490) (1993).

4. Huynh next contends that the trial court erred by refusing to instruct the jury, upon written request, to disregard any witness' testimony who knowingly swore falsely at trial, unless his testimony is corroborated by other evidence. See OCGA § 24-9-85 (b). Huynh argues the charge was warranted because the deputy wilfully swore falsely by first stating he was on "routine patrol" and then admitting that he had been called in early specifically to assist in this investigation. Also, Huynh argues that the deputy's testimony concerning improper lane changes required the jury charge because that testimony is not supported by the police report.

An inconsistency, however, does not necessarily imply an intentional lie. OCGA § 24-9-85 is only applicable when the witness either admits that he intentionally swore falsely, or that intention is manifest from his testimony. See *Warnock v. State*, 195 Ga. App. 537, 538 (1) (394 SE2d 382) (1990). Huynh, however, only points to discrepancies that challenge the deputy's credibility. It does not necessarily follow that the deputy intentionally lied because he added details of the arrest at trial that he did not indicate in his police report. Neither does it follow that the deputy purposefully lied when he character-

ized "routine patrol" differently from the defense attorney on cross-examination.

5. Finally, Huynh asserts the jury verdict form was impermissibly suggestive in that the "guilty" option was listed before the "not guilty" option. This claim is without merit. Because the trial court instructed the jury on how to use the verdict form and the "not guilty" option was clearly indicated, "no reasonable juror could have been misled into believing that option was not available." *Chapman v. State*, 258 Ga. 214, 217 (4) (367 SE2d 541) (1988).

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED JUNE 4, 1999 —
RECONSIDERATION DENIED JULY 13, 1999 ■■■■■■■

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Annette S. Malena, Assistant District Attorney*, for appellee.