665 S.E.2d 896 (2008)
In the Interest of E.C., a Child.
No. A08A1477.
Court of Appeals of Georgia.
July 17, 2008.
Paige A. Pastor, for appellant.
Gwendolyn Keyes Fleming, Dist. Atty., Elisabeth G. MacNamara, Asst. Dist. Atty., for appellee.
ELLINGTON, Judge.
The Juvenile Court of DeKalb County adjudicated 16-year-old E.C. delinquent based upon an act that would have constituted the crime of obstruction of a law enforcement officer, OCGA § 16-10-24(a), if committed by an adult. E.C. appeals, contending that the evidence presented was insufficient to support an adjudication of delinquency based upon obstruction. Finding no error, we affirm.
In considering the sufficiency of the evidence supporting a juvenile court adjudication *897 of delinquency, we apply the same standard of review that is used in any criminal case by construing the evidence in favor of the adjudication to determine if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. In the instant case, we must construe the testimony of [the arresting officer], the only witness at the hearing, in favor of the delinquency adjudications.
(Citation and punctuation omitted.) In the Interest of J.T., 239 Ga.App. 756, 757, 521 S.E.2d 862 (1999).
Viewed in this light, the evidence showed that, on Monday, September 25, 2006, a uniformed DeKalb County police officer was on routine patrol in an area that had recently experienced a high rate of burglaries by juveniles. The officer's commander had instructed him to look out for juveniles who were "skipping" school and, if he found any, to cite them for truancy and return them to school.[1] According to the officer, local high school students were supposed to be in school by 8:30 a.m. that morning.
At 8:50 a.m., the officer observed a group of young men who appeared to be teenagers and were standing near the leasing office of an apartment complex. As soon as the officer approached them in his patrol car, the teenagers started walking in different directions; some of them walked in the opposite direction of a nearby high school. The officer got out of his patrol car and asked the teenagers to come over to him. According to the officer, he wanted to ask them some general questions so that he could determine whether they were truants. E.C. turned around and started to run away, however, and he kept running even when the officer told him to stop. Shortly thereafter, another officer arrived on the scene, and he caught and detained E.C. The officers then determined that E.C. was 16 years old.
The State filed a delinquency petition charging E.C. with running from a police officer while the officer was lawfully discharging his official duties, an act that would have constituted obstruction of a police officer if E.C. had been an adult.[2] Following a hearing, the juvenile court adjudicated E.C. delinquent, and this appeal followed.
In arguing that the evidence was insufficient to support the adjudication of delinquency based upon obstruction, E.C. contends that the police officer was not engaged in the lawful discharge of his official duties when he told E.C. to stop. According to E.C., the officer did not know E.C. or whether E.C. was actually required to attend school, so "[a]ny suspicion that E.C. was truant was at best a hunch." Further, because the officer was not investigating any specific criminal activity at the time, E.C. argues that the officer had no reasonable, articulable suspicion upon which to stop and detain him. E.C. argues that, as a result, he was free to run away from the officer and could not be found to have obstructed the officer by doing so. Essentially, E.C. argues that the officer had to know that E.C. was, in fact, violating mandatory school attendance laws before he could stop and question E.C., even briefly. This argument lacks merit.
There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention; (2) brief seizures that must be supported by reasonable suspicion of criminal activity; and (3) full-scale arrests that must be supported by probable cause. In the Interest of S.B., 207 Ga.App. 60, 61, 427 S.E.2d 52 (1993). In the first tier, a police officer may approach a person, ask for identification *898 and question the person without any basis or belief that he or she is involved in criminal activity, as long as the officer does not detain the person or create the impression that the person may not leave. Welborn v. State, 232 Ga.App. 837, 839(2), 503 S.E.2d 85 (1998). In contrast, a second-tier encounter occurs when the officer conducts a brief investigative stop of a person due to a particularized and objective basis for suspecting the person is involved in criminal activity. McClain v. State, 226 Ga.App. 714, 716(1), 487 S.E.2d 471 (1997).
In this case, during school hours, the officer was on routine patrol and looking for possible truants in an area known for having a high rate of burglaries when he observed several teenagers who appeared to be young enough to be subject to mandatory school attendance laws. Under these circumstances, the evidence supports a finding that the officer had a reasonable, particularized and objective basis for suspecting that the teenagers were truants. Thus, he was authorized to briefly stop and detain the teenagers while determining whether they were truants[3] and, if so, to take custody of them and return them to school, pursuant to OCGA §§ 20-2-698 and 20-2-699.
When the officer approached E.C. to question him, however, E.C. ran away. E.C. then failed to comply when the officer told him to stop, which hindered the officer from fulfilling his official duties. "[F]light, or attempted flight, after a [lawful] command to halt constitutes obstruction of an officer within the meaning of OCGA § 16-10-24." (Citation and punctuation omitted.) In the Interest of E.G., 286 Ga.App. 137, 139(2), 648 S.E.2d 699 (2007). See also Dukes v. State, 275 Ga.App. 442, 443(1), 622 S.E.2d 587 (2005) (accord).
Moreover, given the other suspicious circumstances presented in this case, E.C.'s unprovoked flight when the officer approached provided additional support for the officer's suspicion that E.C. was involved in illegal activity, thereby further authorizing the officer to stop and briefly detain E.C. while he investigated the situation. See Copeland v. State, 281 Ga.App. 11, 14(2), 635 S.E.2d 283 (2006) (a defendant's unprovoked flight, when combined with other suspicious circumstances, can give rise to a reasonable, articulable suspicion of criminal activity).
Accordingly, the evidence supports the juvenile court's finding that the officer was in the lawful discharge of his official duties at the time E.C. ran away from him. Thus, the evidence also supports the court's adjudication of E.C. as delinquent based upon an act of obstructing a police officer.
Judgment affirmed.
BLACKBURN, P.J., and MILLER, J., concur.
NOTES
[1] Pursuant to OCGA § 20-2-698,

[a]ny peace officer may assume temporary custody, during school hours, of any child subject to compulsory school attendance who is found away from home and who is absent from a public or private school or a home study program without a valid written excuse from school officials or from the parent or guardian in charge of the home study program.
See also OCGA § 20-2-699 ("Any person assuming temporary custody of a child pursuant to Code Section 20-2-698 shall immediately deliver the child either to the parent, guardian, or other person having control or charge of the child or to the school from which the child is absent, or if the child is found to have been adjudged a delinquent or unruly, he shall cause the child to be brought before the probation officer of the county having jurisdiction over such child.").
[2] Under OCGA § 16-10-24(a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."
[3] In fact, the evidence in the record demonstrates that E.C. was truant on the day at issue. OCGA § 20-2-690.1(a) requires school attendance (in a public school, private school or home school program) for all children between their sixth and sixteenth birthdays except for children who have completed the requirements for a high school diploma. An unemancipated minor between the ages of 16 and 18 who has not completed the requirements for a high school diploma must attend school unless he or she has the written permission of his or her parent or legal guardian before withdrawing from school. OCGA § 20-2-690.1(e). Not only was there no evidence that, at the time of the incident at issue, E.C. had completed the requirements for a high school diploma, was emancipated, or had his parents' written permission to withdraw from school, but, during the dispositional phase of the hearing, defense counsel admitted that E.C. was enrolled as a tenth grader at Stone Mountain High School.